1  Douglas R. Dollinger, *pro se*
   Law Offices of Douglas R. Dollinger, PC
2  NYS Bar Code 2354926
   570 County Rt 49
3  Middletown, New York 10940
   Telephone  845.741.9363
4  Email: ddollingeresq@gmail.com

5  MICHAEL GHISELLI *pro se*
6  386 Donald Dr.
   Moraga, CA 94556
7  Email: mghiselli@icloud.com

8             UNITED STATES DISTRICT COURT
                 DISTRICT OF NEVADA
9                   RENO DIVISION

3:24-cv-00395

10  JOSEPH R.CELLURA and EMELIA B. CELLURA,    Case No.: 24- CV- 0172 + SDNY - CV - 0859
    husband and wife,
11                                Plaintiffs,   **NOTICE OF REMOVAL**

12          Vs.                                 Removed from:

13                                              The Second Judicial District Court
14  DOUGLAS R. DOLLINGER, an individual, THE    State of Nevada, Washoe County
    LAW OFFICES OF DOUGLAS R. DOLLINGER,
15  P.C. & ASSOCIATES, a New York law firm,     Dept. No.: 1
    MICHAEL F. GHISELLI, an individual; and DOES Case No. CV24-01834
16  1-10, inclusive,
                                                **RELATED FEDERAL ACTIONS**
17                                Defendants.    **NV 24-CV-0172 & SDNY-CV-0859**

18  **TO:**   Clerk of the U.S. District Court for the United States District Court District of Nevada Reno

19  Division:

20                          **NOTICE OF REMOVAL.**

21     On August 13, 2024, Plaintiff Joseph R. Cellura ("Cellura") filed a second state court Complaint-CV24-

22  01834, against the Defendants adding his wife Emelia Baer Cellura ("Baer-Cellura") styled as JOSEPH R.

23  CELLURA and EMELIA B. CELLURA, husband and wife, Plaintiffs, v. DOUGLAS R. DOLLINGER, an

24  individual, THE LAW OFFICES OF DOUGLAS R. DOLLINGER, P.C. & ASSOCIATES, a New York law

25  firm, MICHAEL F. GHISELLI, an individual; and DOES 1-10, inclusive, Defendants. **("SNAction" CV24-**

26  **01834, Exhibit "1").**

27     Defendants, Douglas R. Dollinger an individual, The Law Offices of Douglas Dollinger, P.C., &

28  Associates, a New York law firm (jointly "Dollinger"), Michael F. Ghiselli, ("Ghiselli") an individual,

                                    - 1 -

collectively the *pro se* Defendants, ("Defendants"), hereby seek removal  to this Court the SNAction described hereafter pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1441, 1446, and 1447. (**"Dkt."** references are hereafter found at **(24-CV-0172 (ART)** filed with this Court.)

Pursuant to 28 U.S.C. § 1446(d) and this Court's Local Rules copies of this Notice of Removal and Exhibits are being served on all parties at the addresses listed in Plaintiff's state court complaint and are being filed in the Second Judicial District Court State of Nevada, Washoe County, Dept. No.: 1 Case No. CV24-01834, 75 Court Street, Reno Nevada 89501.

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the claims are subject to  federal law pursuant to 18 U.S.C. section 1961-1968, the  "RICO Act" as related to witness tampering-harassment, tampering with evidence, attempted obstruction concerning the Defendants' rights to have this Court,  and other federal courts hear their claims of embezzlement involving interstate money laundering causing damage to their property. (§§1961, 15).

This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because (1) there is complete diversity between the named parties, and (2) the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.[1]

Pursuant to Local Rule 81(a)(1), a completed civil cover sheet will be filed herewith. Other than the Summons  & Complaint-Request for Temporary Restraining Order  and Civil Cover Sheet there are no other documents to transfer.

## BACKGROUND.

Defendants seek to remove the August 13, 2024, SNAction which contains, for the most part,  the identical allegations related to claims made in the March 18, 2024, First Nevada Action ("FNAction") pending before this Court on the Removal Motion of April 15,  2024 and the attempt to defeat the first to file rule. (**Dkts. 1, Pages 10-38; 12-21**). The exception is the inclusion of two statements: 1) claims of discipline by the SDNY Court;[2] and 2)  a claim that an email was sent to  an individual Diana Sweeny, a dance instructor for Celluras'

---

[1] A notice of removal "need only include a '***plausible allegation*** that the amount in controversy exceeds the jurisdictional threshold.'" *Buscema v. Wal-Mart Stores East LP*, No. 19- CV-01089-MV-KK, 2020 U.S. Dist. LEXIS 68412, at *14 (D.N.M. Apr. 16, 2020) (emphasis added).

[2] The issue of any sanction by the New York Court should be viewed as misleading and this Court should be aware the issue is payment of legal fees.  Based on Attorney Gilmore's activity with Plaintiffs' New York Counsel, meaning their  coordinated filing of these actions in Nevada, the acts are being reviewed in New York

1   daughter who it is claimed received the email alleging facts openly available to the public, and despite over

2   100 noteholders claiming loses by reason of the Cellura embezzlement-claim that only Defendants could have

3   sent the email. See, **Exhibit 1** the Ezra email annexed as  Exhibit-2-SNAction,  stating:

4       **From:** Diana Sweeney <cedance@creativeedgenv.com>
        **Date:** August 11, 2024 at 8:06:56 PM PDT
5       **To:** Emelia Cellura <emeliabaer@yahoo.com>
        **Subject: Fwd: Update on Emelia Cellura**
6

7       ---------- Forwarded message ---------

8       From: **EzDr** <ezradrummond2@proton.me>
        Date: Sun, Aug 11, 2024 at 6:06 PM
9       Subject: Update on Emelia Cellura
        To: ezradrummond2@proton.me <ezradrummond2@proton.me>
10

11      Dear All,

12      Ezra here.

13      I trust this message finds you well. I wanted to share some rather intriguing
        news regarding Emelia and her husband, Joe.
14
15      She and Joe are named in a lawsuit as defendants where it claims they embezzled
        approximately $17 million (allegedly).

16      Should you have any doubts, I invite you to read the detailed complaint in
        its entirety, which you can easily locate by searching online. Just type in
17      the following into Google: emelia cellura empire trust

18      I believe there is even a free trial at Pacer Monitor. Find it and read it.
19      Now, I fully expect that some of you may feel compelled to forward this
        message to Emelia, and I wouldn't be surprised if she vehemently denies
20      everything.

21      In any case, the choice is yours.

22      Warm regards,

23      Ezra

24   _____

25   as acts intended to coerce the Defendants to settle and otherwise obstruct Dollinger's representation of the Plaintiffs
     in the SDNY Action  (Dkt.1, Pages 39-188). Noteworthy, the Celluras' New York attorneys' received consent
26   adjournments from Dollinger advising the SDNY Action Judge they wanted to engage in settlement talks but never
     did. Instead, they left the talks to Attorney Gilmore who admitted the goal has been to stop Dollinger ("it is you we
27   are after")  from representing ADMI-Ghiselli et al. Incredibly, although these Attorneys claimed they had a signed
     Settlement Agreement from ADMI, and other necessary parties to the Settlement Agreement, they did not.
28   (Dollinger "BTW Please send me the agreement signed by ADMI"). (Gilmore " Don't need to. You signed it and
     took the money") and see below for continuity-clarity.  **(Exhibit 2, 2.1 & 4,  Dkts. 20¶¶11-13; 21-Pages 5-7 ).**

1    The SDNY Action was first to be filed on February 8, 2024. The claims  arise under the umbrella
2    and sale for equity portions of a Branded Licensing  Agreement (SI-Lic) issued by Authentic Brands
3    Group, a company headquartered in New York and  ADMI's partners, wherein all rights to use the
4    license are owned by ADMI and its partners, all the transactions including ADMI stock issuance
5    occurred from its principal place of business in New York. The SDNY Plaintiffs are seeking to recover
6    payments embezzled and otherwise converted by Cellura and his wife Emelia Baer Cellura of more
7    than  $17,000,000.

8    The theft occurred before it could be discovered.  A restraining order and order for turnover as
9    well as an order prohibiting the Celluras from interfering in ADMI's business opportunities are now
10   being sought.

11   The Amended Complaint alleges: 1) Securities Fraud-17 CFR 240.10b-5 Exch. Act; 2) Fraudulent-
12   Misrepresentation-Inducement; 3) Breach of Contract; 4) Prima Facie Tort-Ponzi Scheme; 5)
13   Conversion-Civil Conspiracy; 6) Breach of Fiduciary Duty-Constructive Trust; 7) Accounting &
14   Turnover; 8) Injunctive Relief/Declaratory Judgment. **(Dkt. 1, Pages 39-188).**

15   The FNAction was filed some six week later on March 18, 2024, and rest on the very claims  set
16   forth in the SDNYAction involving disputed ownership to securities issued by ADMI to the Plaintiff
17   Cellura and includes claims against Ghiselli and Dollinger for:  1) Breach of Contract; 2) Breach of
18   Fiduciary Duty; 3) Negligence-Legal Malpractice; 4) Defamation; 5) Intentional Interference with
19   Contract; 6) Intentional Interference with  Perspective Economic Advantage; and 7) Declaratory
20   Relief.   **(Dkt. 1, Pages 10-38).**   The FNAction was removed on April 15, 2024, and provides
21   jurisdiction pursuant to 28 U.S.C. §§ 1332 under a diversity of citizenship. **(Dkt. 1).**

22   The SNAction claims; 1) breach of contract; 2) defamation/conspiracy and 3) seeks injunctive relief.
23   (Exhibit "1").  The SNAction's jurisdictional matters concern both a diversity claim, 28 U.S.C. § 1332  as
24   well as a related federal question under 28 U.S.C. § 1331 where Plaintiffs as principles and others acting
25   on their behalf, as an association-in-fact enterprise,  through a pattern of unlawful activity, predicate acts
26   are engaged in interstate money laundering concerning funds and other property belonging to ADMI and
27   over 100 noteholders, wherein Plaintiffs and their Counsel are conspiring to obstruct justice and otherwise
28   coerce the Defendants, making false and vexious claims designed to force a settlement, doing so by

1    engaging in conduct intended to injure, and intimidate Defendant Ghiselli as ADMI's lawful CEO and

2    Dollinger as ADMI's in-house counsel while engaging in defined racketing activity. [3] (18 U.S.C.§ 1961

3    and unlawful acts §§ 1341/1343, 1512, 1513 & 1956 )

4        Although the removal of the FNAction was pending before this Court, rather than seek relief in that

5    matter, Attorney Gilmore acted in a manner intended to further obstruct the federal courts authority related

6    to multiple issues concerning jurisdiction in Nevada and the SDNYAction  claims of looting and money

7    laundering by the Celluras.  His use, and the unlawful  manner he used to secure a claimed Settlement

8    Agreement to establish personal jurisdiction in Nevada over Dollinger makes him a material witness as

9    matter of law concerning whether he is aiding in the obstruction of justice and witness tampering.  It is

10   apparent Attorney Gilmore's believes he would get favorable treatment in a Nevada state court and needs

11   to avoid the oversight of this Court. However, that did not happen, the State Court Judge denied the TRO

12   citing the truth of the email and lack of probability of success in the claim. **(SNAction Exhibit 1, attached**

13   **TRO Denial).**

14       It is incomprehensible, reckless and otherwise harassing, to have filed the SNAcion as drawn, especially

15   where Attorney Gilmore admits he  filed  without first conducting any due diligence and did so with no proof

16   whatsoever,  instead claiming  that the Defendants were the only ones who would  have been motivated to

17   send the email, despite his knowledge of the publicly available filings and that hundreds of investors are

18   seeking recovery of the looted funds the Celluras' unlawfully absconded with. Incredibly, although he had no

19

20   _____

21   [3]Beyond the proof offered in footnote 2 above, there are inconsistencies present in the filings before this Court
     and the SNAction.  Signatures are lacking or displaced because Attorney Gilmore never represented the parties

22   to the Agreement as he claimed, and never had their signatures or authority to settle, but falsely induced
     Dollinger to execute the Settlement Agreement. He then sent funds belonging to ADMI to Dollinger.  The

23   Settlement Agreement was to be executed by Michael Ghisell,  not Cellura. Cellura lacked authority to do so
     as an officer of ADMI or any other entity except Mailbu55. When Ghiselli discovered a deception, that Cellura

24   was falsely claiming he never retired from the Boards' of ADMI, EP5 f/k/a Tarsin Mobile Inc., Episode 5 and
     continued  to falsely claim he was CEO and majority holder of ADMI together with the false claims Attorney

25   Gilmore represented Tim Wilbanks, a necessary signor he refused to sign. **(Dkt. 20¶¶11-13).  (Exhibit 2.1**
     **establishes Gilmore knew Ghiselli was signing for the entities. Exhibit 3 establishes he did not represent**

26   **Tim Wilbanks and Exhibit 4 and establishes these matters were a condition of the Settlement Agreement**
     **with Dollinger).** Despite his knowledge of these facts, Attorney Gilmore claims personal jurisdiction over

27   Dollinger here in Nevada and as a  basis for disqualification and legal fees in New York.  Clearly, Attorney
     Gilmore  is a material  witness  to the creation and execution of the document.  His false claims he represented

28   all parties to the agreement and had their signatures cannot be explained other than by his direct testimony
     concerning material issue of fact and law.  This Court has concurrent authority to review these matters and
     may even issue appropriate orders once the matter is fully brief.

1   proof of who the sender was, he demanded admission to the act concerning the email or alternatively demanded

2   information on whoever would have committed the act, demanding execution of a sworn declaration to avoid

3   Nevada prosecution and imposed injunctive relief. (**Exhibits 2.4-2.7 Gilmore's demands and admission he**

4   **had no proof but filed to unlawfully coerce Defendants-18 U.S.C. 1961**).

5       His goal of course was to obtain a collateral judicial finding and then remove CEO Ghiselli from his

6   authority to engage in the sale of the remaining SI-License equity. This act is not simply bad faith but is

7   intended to tamper with a witness and obstruction of justice and should be treated as such. Fortunately,  the

8   Nevada State Court Judge saw through it. (**SNAction, Exhibit 1**).

9

10                              **BASIS FOR ACTION REMOVAL.**

11      **I.    Removal is Proper Because This Court Has Subject Matter Jurisdiction**
                **Pursuant to 28 U.S.C. §§ 1331 and 1441(b).**

12

13      **A.** Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action because the  filing of the

14   State Action is an intentional act designed to divest the Court of proper jurisdiction by making any order-

15   judgment imposed by it lost to a Nevada state court order or judgment.  No doubt, this Court is keenly

16   aware that even if a plaintiff may proceed in a state  court upon a cause of action it is equally true that the

17   "[f]ederal courts should not sanction devices intended to prevent a removal to a Federal court where one

18   has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit

19   the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. National Enameling &*

20   *Stamping C*o., 204 U.S. 176, 186 (1907).

21      **B.** In this case the Plaintiffs' have devised  a scheme to prevent the removal of a case that does

22   not meet minimal due process standards to be heard in a Nevada state court. Because there is no

23   "reasonable possibility that the Nevada state's highest court would find that the  SNAction states a

24   cause of action upon which relief may be granted, recognizing the application of Nevada's anit-

25   SLAPP laws."[4]

26   _____

27   [4] Although Defendants deny all knowledge of the email source under Nevada's anti-SLAPP law because
     the statements are true there are strong protections for individuals who fairly and accurately report on
28   matters of public interest, especially those related to judicial proceedings. *Adelson v. Harris, et. al*., 133
     Nev. Adv. Op. 67 (Sept. 27, 2017). The statements are true as found by the Nevada State Court-**SNAction**.

**C.** Under the circumstances, the Court should disregard, for jurisdictional purposes the intentional deception concerning the monetary threshold finding that because the basis of the claims is true the right to expression is protected under the 1st Amendment as a matter of law. Moreover, there is no nexus with Nevada for any Defendant at the time of the events complained of or even an attempt to identify the Defendants as the individuals who were the authors of the email. Other than by shear speculation concerning who sent or caused to be sent the email, the claim as intended is a deception preempted by federal law involving witness intimidation, as an unlawful as under 18 U.S.C ¶1961, involving § 1512 (relating to tampering with a witness, victim, or an informant), §1513 (relating to retaliating against a witness, victim, or an informant).

**D.** Even more telling of the intended intimidation, not only does Attorney Gilmore admit he intentionally set damages below the monetary threshold of $75,000 to defeat a diversity claim, but that by doing so he intending to remove the ability of CEO Ghiselli and Dollinger as Counsel to ADMI from seeking proper removal under the powers of this Court. **(Exhibit 2.2.)**

## II.   Removal is Proper Because This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C. §§ 1332 and 1441(b).

**A.** Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because it is between citizens of different states, and the amount in controversy is greater than $75,000, exclusive of interest and costs. Therefore, this action could have originally been filed in this Court and is now properly removed to this Court.

### 1.   There is Complete Diversity of Citizenship Among the Parties.

**B.** By their pleadings, the Plaintiffs are residents of Nevada and citizens of Nevada.

**C.** Here, the SNAction specifically alleges that Defendant Ghiselli is a resident of California and that Dollinger is a New York resident. Defendants are citizens of these respective states.

**D.** Hence, there is complete diversity between the Plaintiff and the Defendants in this case, and this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

### 2.   The Amount in Controversy Requirement is Satisfied.

**E.** To determine the amount in controversy, courts look first to the plaintiff's state court action. In this case, the amount in controversy meets the jurisdictional requirements, as Plaintiffs are seeking to recover at least $74,000 in damages, plus interest and legal fees. The addendum for relief, Exhibit "1" provides:

3. For general and special damages according to proof;
4. For attorney fees and costs; . . . [5]

## III.   Defendants have Satisfied the Procedural Requirements for Removal Pursuant to 28 U.S.C. §§ 112(d), 1441 & 1446(b)(1).

**A.**  On August 13, 2024, Plaintiff filed the Complaint in the Second Judicial District Court State of Nevada, Washoe County, Dept. No.: 1 Case No. CV24-01834. 28 U.S.C. § 112(d).

**B.**  To the best of undersigned being aware, and as of the filing of this Notice of Removal, Plaintiff has served only Defendant Ghiselli. Accordingly, this Notice of Removal is timely filed. *See* 28 U.S.C. § 1446(b)(1). The notice of removal concerning a civil action or proceeding shall be filed within 30 days upon knowledge or service of the pleading. The Defendants Ghiselli and Dollinger were served less than 30 days before the filing of this Notice of Removal.

**C.**  This action is being removed "to the district court of the United States for the district and division embracing the place where such action is pending," pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Second Judicial District Court State of Nevada, Washoe County, Dept. No.: 1 Case No. CV24-01834. 28 U.S.C. § 112(d).

**D.**  No previous application has been made for the removal of Case No. CV24-01834.

## IV.   Preservation of Rights and Defenses-Fed. R. Civ. P. Rule 12(b).

All rights are reserved, including, but not limited to, defenses and objections as to venue and personal jurisdiction and the right to move for dismissal of the Complaint for, *e.g.*, failure to state a claim for relief and failure to sue the appropriate parties.

---

[5] The Tenth Circuit has explained that the amount in controversy is "not the amount the plaintiff will recover," but instead "an estimate of the amount that will be put at issue in the course of the litigation." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012). Moreover, "the question at this stage in the proceedings isn't what damages the plaintiff will likely prove but what a factfinder might conceivably lawfully award." *Hammond v. Stamps.com*, 844 F.3d 909, 912 (10th Cir. 2016) (emphases in original). The pleading itself demonstrates the amount in controversy in this action exceeds the $74,000 demanded and that its monetary figure was limited as an intentional act The result as intended was to intimidate the Defendants. In fact, the intent has been expressly admitted too by Plaintiffs' Counsel. **(Exhibits 2.2)**. The jurisdiction figure does not account for additional potential liabilities, including attorney's fees, punitive damages, and other costs. Courts have recognized that when calculating the amount in controversy, it is appropriate to include such additional costs if they are recoverable under the plaintiff's claims *Section 1332 (B) provides that removal of the action is proper based on an amount in controversy asserted under subparagraph (A) providing that if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a) the monetary threshold has been met.* Defendants make no admission of liability, nor do they waive any defense to damages with respect to any aspect of this case.

1    The filing of this Notice of Removal is subject to, and without waiver of, any such defenses and

2  objections. The Defendants also reserve the right under Fed. R. Civ. P 12(b), and to amend or supplement

3  this Notice of Removal including transfer and or dismissal of both the FNAction and SNAction.

4    **WHEREFORE,** Defendants respectfully give notice that the above-captioned civil action pending

5  the Second Judicial District Court State of Nevada, Washoe County,  Dept. No.:1 CV24-01834 is

6  removed to this Court, pursuant to 28 U.S.C. §§ 1331,  1332, 1441, 1446, and 1447.

7    Respectfully submitted,

8    *Douglas R. Dollinger, Esq.*
     Douglas R. Dollinger, *pro se*

9    Law Offices of Douglas R. Dollinger, PC
     NYS Bar Code 2354926

10   570 County Rt 49
     Middletown, New York 10940

11   Email: ddollingeresq@gmail.com

12

13   Michael GhiselI *pro se*
     386 Donald Dr.

14   Moraga, CA 94556
     Email: mghiselli@icloud.com

15

16               **FILING VERIFICATION/DECLARATION.**

17    Pursuant to 28 U.S. Code § 1746,  by our signatures below hereby declare as to the foregoing claims

18  and facts as set forth in the Notice of Removal from the Second Judicial District Court State of Nevada,

19  Washoe County,  Dept. No.: 1 CV24-01834 of this date August 30, 2024, to be true and accurate including

20  our individual states of residence and citizenship.

21   *Douglas R. Dollinger, Esq.*
     Douglas R. Dollinger, *pro se*

22   Law Offices of Douglas R. Dollinger, PC

23   NYS Bar Code 2354926
     570 County Rt 49

24   Middletown, New York 10940
     Email: ddollingeresq@gmail.com

25

26   Michael F. Ghiselli *pro se*
     386 Donald Dr.

27   Moraga, CA 94556

28   Email: mghiselli@icloud.com

**CERTIFICATE OF SERVICE.**

I hereby certify that on September 3, 2024, the foregoing Notice of Removal, and all exhibits thereto, were filed in  this Court's and that copies of same were served upon all parties via American Process Service via personal service via and the State Court at the addresses listed in the Complaint:

Frank C. Gilmore, Esq (SBN 10052)        Alicia L. Lerud
The Gilmore Law Group, PLLC              Clerk of the Court
3715 Lakside Drive                       75 Court Street
Reno, Nevada 859509                      Reno, Nevada 89501
(917) 300-1958                           (718) 855-5100


*Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq. NYS Bar Code 2354926
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Email: ddollingeresq@gmail.com

- 10 -

Code:  4085

IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF WASHOE

JOSEPH R. CELLURA and EMELIA B.
CELLURA, husband and wife,

Plaintiffs,                              Case. No.  CV24-01834

v.                                                 Dept. No.  1

DOUGLAS R. DOLLINGER, an individual,
THE LAW OFFICES OF DOUGLAS R.
DOLLINGER, P.C. & ASSOCIATES, a New
York law firm, MICHAEL F. GHISELLI, an          DOUGLAS R. DOLLINGER,
individual; and DOES 1-10, inclusive,              an individual

_____ Defendants.   /   SUMMONS

**TO THE DEFENDANT: YOU HAVE BEEN SUED.  THE COURT MAY DECIDE
AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU** <u>**RESPOND IN
WRITING**</u> **WITHIN 21 DAYS.     READ THE INFORMATION BELOW VERY
CAREFULLY.**

    A civil complaint or petition has been filed by the plaintiff(s) against you for the relief as set
forth in that document (see complaint or petition).  When service is by publication, add a brief
statement of the object of the action.

The object of this action is: breach of contract, defamation per se and conspiracy to defame, and
declaratory and injunctive relief.

  1. If you intend to defend this lawsuit, you must do the following within 21 days after service
     of this summons, exclusive of the day of service:
     a. File with the Clerk of the Court, whose address is shown below, **a formal written
        answer** to the complaint or petition, along with the appropriate filing fees, in
        accordance with the rules of the Court, and;
     b. Serve a copy of your answer upon the attorney or plaintiff(s) whose name and address
        is shown below.
  2. Unless you respond, a default will be entered upon application of the plaintiff(s) and this
     Court may enter a judgment against you for the relief demanded in the complaint or
     petition.

    Dated this  13th  day of _____August_____, 20 24 .

Issued on behalf of Plaintiff(s):            ALICIA L. LERUD
        Frank C. Gilmore, Esq. SBN 10052     CLERK OF THE COURT
Name:   The Gilmore Law Group, PLLC          By: /S/Y.VILORIA
Address:  3715 Lakeside Drive                        Deputy Clerk
          Reno, Nevada 89509                 Second Judicial District
Court Phone Number: (775) 848-6387           75 Court Street
Email: fgilmore@gilmoregroupnv.com           Reno, Nevada 89501

REV 4/27/21 JDB                              1                                   SUMMONS

F I L E D
Electronically
CV24-01834
2024-08-13 12:25:24 PM
Alicia L. Lerud
Clerk of the Court
Transaction # 10504383 : csulezic

1  $1425
   **FRANK C. GILMORE, ESQ. - NSB #10052**

2  frank@gilmoregroupnv.com
   The Gilmore Law Group PLLC

3  3715 Lakeside Drive
   Reno, Nevada 89509

4  Telephone:    (775) 848-6387
   Facsimile:    (775) 996-9898

5

6  *Attorneys for Plaintiffs*

7  **IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

8  **IN AND FOR THE COUNTY OF WASHOE**

9

10

11  JOSEPH R. CELLURA and EMELIA B.          CASE NO.:
    CELLURA, husband and wife,

12                                            DEPT. NO.:
                    Plaintiffs,

13

14  v.

15  DOUGLAS R. DOLLINGER, an individual,
    THE LAW OFFICES OF DOUGLAS R.

16  DOLLINGER, P.C. & ASSOCIATES, a New
    York law firm, MICHAEL F. GHISELLI, an

17  individual; and DOES 1-10, inclusive,

18                    Defendants.

19  **VERIFIED COMPLAINT**
    *Exempt from Arbitration*

20  **(Injunctive and Declaratory Relief Requested)**

21       Plaintiffs JOSEPH R. CELLURA and EMELIA B. CELLURA, by and through their

22  attorneys The Gilmore Law Group PLLC, hereby bring their Complaint for defamation and

23  declaratory and injunctive relief against Defendants DOUGLAS R. DOLLINGER, an individual,

24  THE LAW OFFICES OF DOUGLAS R. DOLLINGER, P.C. & ASSOCIATES, New York law

25  firm, MICHAEL F. GHISELLI, and any other co-conspirators, as follows:

26                              **PARTIES**

27  1.     Plaintiff JOSEPH R. CELLURA is an individual residing in Washoe County.

28

1

2.     Plaintiff EMELIA B. CELLURA is an individual residing in Washoe County.[1]

3.     Defendant DOUGLAS R. DOLLINGER ("Dollinger") is a licensed attorney residing and practicing in the State of New York, was former long-time legal counsel for Plaintiffs.

4.     Defendant THE LAW OFFICES OF DOUGLAS R. DOLLINGER, P.C. & ASSOCIATES ("DDPC") is a New York professional law firm corporation that is owned by Dollinger and employs Dollinger as its licensed attorney.

5.     Defendant MICHAEL F. GHISELLI ("Ghiselli") is a resident of the State of California, and a former family friend and business associate of the Celluras.

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over Dollinger and DDPC because Dollinger executed the December 11, 2023, MUTUAL SETTLEMENT AGREEMENT WITH RELEASE OF ALL CLAIMS ("Settlement") between Plaintiffs, Dollinger, and DDPC, among others, provides that "This Agreement is to be interpreted, enforced, and governed by and under the laws of the State of Nevada. The Parties agree that this Agreement was made in the County of Washoe, State of Nevada, and Dollinger consents to personal jurisdiction in the State of Nevada for this purpose." A redacted version of the Settlement is attached hereto as **EXHIBIT 1**.

7.     The Court has personal jurisdiction over Defendant Ghiselli because Ghiselli has sufficient minimum contacts with the State of Nevada, related to the subject matter of the claims contained herein, and has systematic and continuous contacts with the State of Nevada to the extent that exercise of jurisdiction over him in this Court is reasonable.

8.     Ghiselli, a resident of Northern California, travelled routinely and regularly to Washoe County to attend business meetings where he met with Celluras and other investors.

9.     Ghiselli purports to be the Chairman and CEO of ADMI, Inc., a Nevada corporation, which has its primary place of business in Reno, Nevada.

10.     During his tenure as a director, shareholder, and officer of ADMI, Ghiselli routinely and consistently met with, communicated with, negotiated with, and finalized

---

[1] Joseph R. Cellura and Emelia B. Cellura are referred to collectively as "the Celluras."

1   agreements with Washoe County investors in ADMI.  During those events, Ghiselli was either

2   physically present in Washoe County, Nevada, or was aware that he was communicating directly

3   with persons located in Washoe County, thereby availing himself of the laws of Washoe County

4   and the protections it provided as an officer, director, and shareholder of ADMI, a Nevada

5   corporation.

6        11.    Further, the acts complained of herein were directed toward the Plaintiffs, who are

7   residents of Washoe County, and the harm resulting from Defendants' conduct was directed

8   toward, and felt in, Washoe County, Nevada.

9        12.    The causes of action alleged herein warrant damages in excess of the jurisdictional

10  minimum of FIFTEEN THOUSAND DOLLARS ($15,000), but in no case do the damages from

11  the actions complained of herein exceed SEVENTY-FOUR THOUSAND DOLLARS ($74,000).

12       13.    Venue is proper in the Second Judicial District Court of the State of Nevada

13  because the acts complained of were directed toward Washoe County, Nevada, and the injuries

14  were felt in Washoe County.

15       14.    As none of the Defendants maintain residences in any other county in Nevada,

16  Washoe County is an appropriate venue for this action.

17                            **GENERAL ALLEGATIONS**

18  **A.    CONTROL AND OWNERSHIP DISPUTES BETWEEN PLAINTIFFS AND**
        **DEFENDANTS.**
19

20       15.    On or about May 11, 2020, ONEDAY INC., was incorporated in the State of

21  Nevada.

22       16.    On or about April 19, 2021, prior to the issuance of shares, the corporation changed

23  its name to ADMI, Inc.

24       17.    After the name change, ADMI authorized and issued 50,000,000 shares, which

25  includes 2,000,000 preferred shares, and 48,000,000 common shares, which are represented by

26  four (4) separate Stock Certificates issued to its shareholders.

27       18.    Each of the Stock Certificates are signed by Ghiselli as the Secretary and Joseph R.

28  Cellura as the President.

3

19.     Certificate #P-1, representing preferred shares, was issued to Cellura in the amount of 1,400,000 shares. Certificate #P-2, representing preferred shares, was issued to Ghiselli in the amount of 600,000 shares. Certificate #C-1, representing common shares was issued to Malibu55, Inc., in the amount of 33,600,000 shares. Shareholder Malibu55, Inc.. is controlled by Cellura.

20.     Certificate #C-2, representing common shares, was issued to F&M Family Trust, in the amount of 14,400,000 shares. Shareholder F&M Family Trust is controlled by Ghiselli.

21.     Pursuant to each of the issued Share Certificates, Cellura holds or controls seventy percent (70%) of the outstanding stock of ADMI.

22.     Pursuant to each of the issued Share Certificates, Ghiselli holds or controls thirty percent (30%) of the outstanding stock of ADMI.

23.     Notwithstanding the fact that the Share Certificates reflect the current ownership of ADMI, both Ghiselli and Dollinger have recently represented to Cellura and other third parties that Ghiselli and Dollinger control the majority of outstanding shares of ADMI.

24.     A dispute exists regarding the true and rightful owners and controlling votes associated with the outstanding stock of ADMI.

25.     To challenge Defendants' contention that they control ADMI, Cellura filed a derivative action on behalf of ADMI in the Second Judicial District Court of the State of Nevada against Dollinger and Ghiselli, which action was removed to the United States District Court for the District of Nevada (the "Nevada Action"). Currently pending in the Nevada action is a Motion to Remand and a Motion to Dismiss and or Transfer.

26.     Dollinger and Ghiselli (purporting to act on behalf of ADMI) commenced an action against the Celluras in the United States District Court for the Southern District of New York, in which they alleged that they controlled ADMI, and that the Celluras had misappropriated ADMI assets (the "SDNY Action").

27.     Currently pending in the SDNY Action are a motion to disqualify and sanction Dollinger, and a motion to dismiss and/or transfer venue to Nevada.

28.     Dollinger and DDPC have served as legal counsel and represented the Celluras in myriad capacities for several years, including as counsel of record in litigation matters in which

4

1  ADMI, Cellura, and Ghiselli were named parties.

2      29.    Dollinger and DDPC are currently (or were until just recently) counsel of record for

3  Dollinger and ADMI in the SDNY Action against the Celluras.

4      **B.    THE DISPUTE BETWEEN CELLURAS AND DOLLINGER**

5      30.    In an effort to resolve disputes between Cellura and Dollinger related to DDPC's

6  representation, on December 11, 2023, the Celluras and their company Malibu55, Inc., on the one

7  hand, and Dollinger and DDPC on the other hand, executed the Settlement in which the parties

8  agreed to a mutual release in exchange for the payment of money to Dollinger (Exhibit 1).

9      31.    In furtherance of the Settlement, Cellura caused a substantial payment to be wired

10 to Dollinger.

11     32.    In furtherance of the Settlement, and at Dollinger's demand and instruction, Cellura

12 caused a substantial payment to be delivered to another Dollinger client (Catizone) to resolve

13 another dispute.

14     33.    In the Settlement, Dollinger confirmed that the "Parties agree that they shall not

15 disparage each other to any third person, whether by oral or written (electronic) medium. This

16 provision is a material term of the Agreement, a violation of which will constitute a full material

17 breach of this Agreement. Dollinger shall not attempt to communicate, solicit, contact, approach,

18 or engage any Client or any of Clients' employees, family members, known business associates, or

19 affiliates for any reason without Clients' express written permission."

20     34.    In violation of this provision, Dollinger did disparage Cellura to third parties and to

21 Cellura business associates.

22     35.    In the Settlement, Dollinger confirmed that the "Parties agree that in the event of a

23 breach of this paragraph, the aggrieved party will have suffered an immediate and/or irreparable

24 injury, and the aggrieved party shall be entitled to injunctive relief without the requirement of

25 proving to a court in equity that the disparagement presents an immediate and/or irreparable

26 injury, and without notice as provided for under the applicable rules of civil procedure. Moreover,

27 no bond or other undertaking shall be required to obtain injunctive relief."

28 ///

5

C.    THE DEFAMATORY EMAIL

36.    On Sunday, August 11, 2024, at approximately 6:06 p.m, Dollinger, Ghiselli, and perhaps others working at their direction, did send a defamatory email to Diana Sweeney (and likely others), who is the Cellura's teenage daughter's dance instructor.  A copy of the email is attached hereto as **EXHIBIT 2**.

37.    The email was sent through a "ghost" email address and sent by a pseudonym of Dollinger and Ghiselli under the name of "Ezra Drummond."  Neither of the Celluras have ever heard of a person called "Ezra Drummond."

38.    The email explains that "I wanted to share some rather intriguing news regarding Emelia and her husband Joe" and then alleges that the Cellura's "embezzled" millions of dollars. (This email and other correspondence to third parties is collectively referred to as the "Defamatory Correspondence").

39.    Of those persons familiar with the ADMI disputes, only Ghiselli could have known the identity of the Cellura's daughter's dance instructor because of his familiarity with the family.

40.    Diana Sweeney has no relationship to any of the parties, or to ADMI, other than providing dance instruction to the Cellura's teenage daughter.

41.    Diana Sweeney explained to the Celluras that she was troubled that she received an unsolicited email from a name she does not know, related to the private business affairs of the Celluras.

42.    It is probable that the email was sent to other people affiliated with the Celluras.

43.    The Celluras fear that this type of conduct will continue unless enjoined.

44.    Ghiselli and Dollinger have a practice of sending defamatory letters of this type to associates of their legal adversaries in an attempt to secure litigation objectives.  Undersigned counsel has received several of these letters from Ghiselli in which serious and defamatory allegations have been made against the Celluras.

### FIRST CLAIM FOR RELIEF
*(Breach of Contract --Settlement)*

45.    Plaintiffs reallege each of the preceding paragraphs as though set forth fully herein.

6

46.     The Settlement is a valid and enforceable Nevada contract.

47.     Dollinger and DDPC executed the Settlement.

48.     Dollinger and DDPC breached the Settlement by disparaging and defaming the Celluras by sending the Defamatory Correspondence, or assisting/directing others to do it for them.

49.     As a direct and proximate result of this defamatory act of breach, the Celluras have been injured in an amount of no more than $74,000 dollars.

## SECOND CLAIM FOR RELIEF
### (Defamation *Per Se* and Conspiracy to Defame– All Defendants)

50.     Plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

51.     Defendants have made false statements accusing the Celluras of committing criminal acts of embezzlement to the public *via* emails regarding Plaintiffs' character and profession.

52.     Defendants have made these false statements that would tend to injury Plaintiffs' trade, business, profession, or office.

53.     Defendants intentionally made these statements knowing they were false, or with a reckless disregard for whether or not they were false.

54.     Defendants made these statements with malice and intent to injure Plaintiffs.

55.     Plaintiffs have been damaged by Defendants in an amount exceeding $50,000 but no more than $74,000.

56.     The conduct of Defendants was willful, wanton, and malicious and this allows for an award of punitive damages against Defendants.

57.     The Defamatory Correspondence, including the email to Diana Sweeney (and probably others) contains a false and defamatory statement was made about the Celluras.

58.     The statement was unprivileged.

59.     The statement was published to a third party.

60.     The plaintiff suffered harm as a result of the statement.

61.     Dollinger, DDPC, Ghiselli, and possibly others work amongst themselves in

7

1    concert with the intent to accomplish an unlawful objective.

2                              **THIRD CLAIM FOR RELIEF**
3                            **(Declaratory and Injunctive Relief)**

4         62.   Plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

5         63.   A controversy exists regarding the parties' rights and obligations under the
6    Settlement.

7         64.   Pursuant to NRS Chapter 30, this Court has authority to enter a declaratory
8    judgment in favor of Plaintiff, and as to the parties' rights and obligations under the Settlement.

9         65.   Pursuant to NRS Chapter 33.010, the Court may enter an injunction "[w]hen it shall
10   appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any
11   part thereof consists in restraining the commission or continuance of the act complained of, either
12   for a limited period or perpetually."

13        **WHEREFORE**, Plaintiff prays for relief as follows:

14        1.    For Declaratory Relief;

15        2.    For Injunctive Relief;

16        3.    For general and special damages according to proof;

17        4.    For attorney fees and costs; and

18        5.    For any further relief as the Court deems just and proper.

19                                  **AFFIRMATION**
20                             **Pursuant to NRS 239B.030**

21        The undersigned does hereby affirm that this document does not contain the social security
22   number of any person.

23        DATED this 12ᵗʰ day of August, 2024.

24                                      THE GILMORE LAW GROUP PLLC
25                                      3715 Lakeside Drive
                                        Reno, Nevada 89509

26                                      /s/ Frank C. Gilmore
27                                      FRANK C. GILMORE
                                        *Attorneys for Plaintiffs*

28

                                        8

## VERIFICATION

STATE OF NEVADA    )
                   ) ss.
COUNTY OF WASHOE   )

JOSEPH R. CELLURA, being first duly sworn, deposes and says under penalty of perjury:

That he is a Plaintiff in this matter; that he has read the attached **VERIFIED**

**COMPLAINT** and knows the contents thereof and that the same are true of his own knowledge,

except as to the matters stated therein on information and belief, and as to those matters, he

believes them to be true.

_____
JOSEPH R. CELLURA

STATE OF NEVADA    )
                   ): ss.
COUNTY OF WASHOE   )

Subscribed and Sworn to before me
this 12th day of August, 2024, by
JOSEPH R. CELLURA.

_____
NOTARY PUBLIC

MARY CARROLL DAVIS
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 94-0407-2 - Expires November 22, 2026

9

## LIST OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION | NO OF PAGES |
|---|---|---|
| 1 | Mutual Settlement Agreement with Release of All Claims (redacted) | 15 |
| 2 | Email dated August 11, 2024, at approximately 6:06 pm | 2 |

F I L E D
Electronically
CV24-01834
2024-08-13 12:25:24 PM
Alicia L. Lerud
Clerk of the Court
Transaction # 10504383 : csulezic

# EXHIBIT 1

EXHIBIT 1

DocuSign Envelope ID: 3174FC03-B805-48D9-82E0-D0BCF4867887

## MUTUAL SETTLEMENT AGREEMENT
## WITH RELEASE OF ALL CLAIMS

This Settlement and Mutual Release Agreement (the "Agreement") is made and entered into as of the last date on the signature page of this Agreement (the "Effective Date"), between and among DOUGLAS R. DOLLINGER, individually, and The LAW OFFICE OF DOUGLAS R. DOLLINGER, PC (collectively "Dollinger"), on the one hand, and JOSEPH R. CELLURA, EMELIA BEAR CELLURA, MICHAEL F. GHISELLI, TIMOTHY WILBANKS, MALIBU55 INC, ADMI INC., EP5 INC., F/K/A TARSIN MOBILE INC., EPISODE5 INC. (collectively the "Clients"), on the other hand. Each settling party shall be a "Party" and collectively shall be the "Parties."

WHEREAS, Dollinger had been engaged by Clients, directly or indirectly, to provide legal representation, counseling, and services over the course of the past several years;

WHEREAS, Clients wish to disengage Dollinger as legal counsel and terminate the relationship between Dollinger and Clients as set forth below;

WHEREAS, on or about February 18, 2023, Dollinger and certain Clients executed the General Release and Settlement Agreement ("First Settlement"), upon which Dollinger received

Share of Sport Illustrated Resorts, as public company or to any assignee of the Sports Illustrated License Agreement ("SIL"), issued by Authentic Brands Group at the election of Dollinger. A dispute between the parties has arisen regarding the enforcement and breach of the First Settlement;

WHEREAS, in order to mutually terminate the relationship between Clients and Dollinger, and to avoid the cost, uncertainty, and inconvenience of further disputes between the Parties regarding the First Settlement, the Parties have agreed to fully and completely resolve, compromise, and settle all disputes, claims, causes of action, actions, liabilities, and damages that either of the Parties have or may have against each other, including, without

DocuSign Envelope ID: 3174FC03-B605-46D9-82E0-D0BCE4887687

limitation, arising out of, based upon, or relating to (i) the First Settlement; (ii) the GLOBAL BRANDS CAPITAL CORPORATION/BAYNON transaction between GHISELLI and Pasquale Catizone and Carmine Catizone; (iii) the ADMI transaction; and (iv) any other equity transactions or litigation in which Dollinger represented Clients, or in which Dollinger claims an actual or equitable equity interest in any of the Client's affiliated entities (collectively, the "Claims").

## AGREEMENT

Therefore, in consideration of the above Recitals, which are incorporated herein by reference, and the mutual promises, agreements, and releases set forth herein, the Parties hereby agree as follows:

1    Payment to Dollinger   Clients shall remit payment to Dollinger in the amount of                                                    the "Settlement Payment"). The Settlement Payment shall be made in two (2) equal payments of

  a.  The first payment shall be paid upon the execution of this Agreement.

  b.  The second payment shall be paid at the time of sale, transfer, or assignment of the last remaining ADMI INC. interest in the Sports Illustrated License ("SIL"), as issued by Authentic Brands Group to Sports Hospitality Ventures LLC ("SHV") and ADMI INC. (the "SHV Transaction"), to be paid from an attorney escrow at the time of closing of the SHV Transaction. In the event that the SHV Transaction is not consummated, Clients shall pay Dollinger annual interest payments equal to                                     of the outstanding amount of the Settlement Payment, which interest payments shall be secured by any revenue due and payable to ADMI from SIL and associated ventures or the

DocuSign Envelope ID: 3174FCC3-B605-46D9-82E0-DCBCE4887687

sale of ADMI assets from March 1, 2024 until paid in full.

3.      Release of Claims by Clients.

a.      Subject to the provisions of subparagraph 3(d) of this Agreement, and conditioned on the full and complete performance by Clients under paragraphs 1 & 2 of this Agreement, upon the Effective Date, Clients, on behalf of themselves and, as appropriate, any of its present or former parent entities, subsidiaries, affiliates, divisions, successors, officers, directors, members, managers, partners, co-venturers, agents, employees, heirs, assigns, insurers, representatives, accountants, lawyers, and all persons acting by, through, or in concert with them (collectively, the "Client Releasors"), hereby fully and completely release and forever discharge DOLLINGER, and, as appropriate, any of its present or former parent entities, subsidiaries, affiliates, divisions, successors, officers, directors, members, managers, partners, co-venturers, agents, employees, heirs, assigns, insurers, representatives, accountants, lawyers, and all persons acting by, through, or in concert with them (collectively, the "DOLLINGER Releasees") of and from any and all manner of action or actions, cause or causes of action, in law or in equity, and any suits, debts, liens, contracts, agreements, promises,

DOLLINGER- ADMI ET AL  Settlement Agreement December 11, 2023        Page 3

DocuSign Envelope ID: 3174FC03-B605-46D9-82E0-D0BCE4887687

liabilities, claims, demands, damages, losses, attorneys' fees, costs, and expenses, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent (hereinafter collectively called "Claims") that any of the Clients Releasors have had or now have against the DOLLINGER Releasees, from the beginning of time to the Effective Date, including, but not limited to, Claims arising out of, based upon, or relating to the Disputes.

b.   Clients acknowledge, understand, and agree that this is a full, complete, and final general release of any and all Claims, and that it shall apply to all unknown, unanticipated, unsuspected, and undisclosed Claims, demands, liabilities, actions, or causes of action, in law, equity, or otherwise as well as those which are now known, anticipated, suspected, or disclosed concerning the Parties, including the Disputes.

c.   Clients represent and warrant that they are the only persons or entities who have any interest in any of the matters herein released, that no other person or entity has any interest in any of the matters herein released, and that there has been no assignment or other transfer of any interest in any of the Claims which they may have against the DOLLINGER Releasees.  Clients agree to defend, indemnify, and hold the DOLLINGER Releasees harmless against any Claims that result from anyone asserting any such assignment or transfer.  Clients agree that if the Client Releasors, or any of them, hereafter commence, join in, or in any manner seek relief through any suit or action arising out of, based upon, or relating to any of the Claims released herein, or in any manner assert against the DOLLINGER Releasees any of the Claims released hereunder, then the responsible Client Releasors shall pay to the DOLLINGER Releasees, in addition to any other damages caused to the DOLLINGER Releasees thereby, all attorneys' fees incurred by the DOLLINGER Releasees in defending or otherwise responding to said suit or Claim.

d.   Nothing in this paragraph 3 shall be construed as a release by the Client Releasors of any of the rights, duties, obligations, or entitlements created by this Agreement.

DocuSign Envelope ID: 3174F C33-R6C9-4BD9-82LC-DDBCE4687687

4.    Release of Claims by DOLLINGER.

a.    Subject to the provisions of subparagraph 4(d) of this Agreement, and conditioned on the full and complete performance by Clients under paragraph 1 & 2 of this Agreement, upon the Effective Date, DOLLINGER, on behalf of himself, and, the Law Office of Douglas R. Dollinger, PC, as appropriate, any of his present or former parent entities, subsidiaries, affiliates, divisions, successors, officers, directors, members, managers, partners, co-venturers, agents, employees, heirs, assigns, insurers, representatives, accountants, lawyers, and all persons acting by, through, or in concert with them (collectively, the "DOLLINGER Releasors"), hereby fully and completely release and forever discharge Clients, on behalf of themselves and, as appropriate, any of its present or former parent entities, subsidiaries, affiliates, divisions, successors, officers, directors, members, managers, partners, co-venturers, agents, employees, heirs, assigns, insurers, representatives, accountants, lawyers, and all persons acting by, through, or in concert with them (collectively, the "Client Releasees") of and from any and all manner of action or actions, cause or causes of action, in law or in equity, and any suits, debts, liens, contracts, agreements, promises, liabilities, Claims, demands, damages, losses, attorneys' fees, costs, and expenses, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent that any of the DOLLINGER Releasors have had or now have against the Client Releasees, from the beginning of time to the Effective Date, including, but not limited to, Claims arising out of, based upon, or relating to the Disputes.

b.    DOLLINGER acknowledges, understands, and agrees that this is a full, complete, and final general release of any and all Claims, and that it shall apply to all unknown, unanticipated, unsuspected, and undisclosed Claims, demands, liabilities, actions, or causes of action, in law, equity, or otherwise as well as those which are now known, anticipated, suspected, or disclosed concerning the Parties, including the Disputes.

DocuSign Envelope ID: 3174FC03-B805-46D9-82E0-D0BCE4887687

c.   DOLLINGER represents and warrants that they are the only persons or entities who have any interest in any of the matters herein released, that no other person or entity has any interest in any of the matters herein released, and that there has been no assignment or other transfer of any interest in any of the Claims which it may have against the Client Releasees.  DOLLINGER agrees to defend, indemnify, and hold the Client Releasees harmless against any Claims that result from anyone asserting any such assignment or transfer. DOLLINGER agrees that if the DOLLINGER Releasors, or any of them, hereafter commence, join in, or in any manner seek relief through any suit or action arising out of, based upon, or relating to any of the Claims released herein, or in any manner assert against the Client Releasees any of the Claims released hereunder, then the responsible DOLLINGER Releasors shall pay to the Client Releasees, in addition to any other damages caused to the Client Releasees thereby, all attorneys' fees incurred by the Client Releasees in defending or otherwise responding to said suit or Claim.

d.   Dollinger shall execute a resignation from any office he holds or has held in any of Clients' entities, and he simultaneously quitclaims and interest he holds in any of Clients' entities, whether that interest is held actually, constructively, or equitably.

e.   Nothing in this paragraph 4 shall be construed as a release by the DOLLINGER Releasors of any of the rights, duties, obligations, or entitlements created by this Agreement.

5.   <u>Confidentiality</u>.  The Parties agree that the promises of confidentiality herein are a material inducement to the execution of this Agreement.  Accordingly, the Parties and their respective employees, agents, representatives, and attorneys agree to keep the content of the settlement negotiations and the specific terms and conditions of this Agreement (collectively, the "Settlement Terms") confidential.  The Parties agree that they will not disclose the Settlement Terms to any third party without the other Party's prior, express, written

DocuSign Envelope ID: 3174FCC3-B605-46D9-82E0-D0BCE4587687

consent, except (i) as required by applicable law, rule, or regulation, or (ii) to comply with the terms of this Agreement itself. Notwithstanding the foregoing, a Party may disclose the Settlement Terms to its agents, attorneys, auditors, accountants, and tax advisors with a need to know, provided they likewise agree to maintain the confidentiality of the information. In the event a Party receives a subpoena or order of a court of competent jurisdiction that requires the production of this Agreement or the disclosure of the Settlement Terms, the receiving Party agrees to give the other Party(ies) prompt notice at least five (5) business days in advance of production or disclosure so that any of the non-receiving Party(ies) may seek an appropriate protective order. Notwithstanding the foregoing, in response to any questions about the Disputes or the Action, the Parties may disclose the fact that the Disputes between the Parties have been amicably resolved on terms which are confidential. Any breach of this paragraph shall constitute a breach of the Agreement, which will entitle the aggrieved Party (or Parties) to injunctive relief and/or monetary damages in an amount according to proof against the offending Party.

6      Non-Disparagement and Non-Solicitation The Parties agree that they shall not disparage each other to any third-person, whether by oral or written (electronic) medium. This provision is a material term of the Agreement, a violation of which will constitute a full material breach of this Agreement. Dollinger shall not attempt to communicate, solicit, contact, approach, or engage any Client or any of Clients' employees, family members, known business associates, or affiliates for any reason without Clients' express written permission. The Parties agree that in the event of a breach of this paragraph, the aggrieved party will have suffered an immediate and/or irreparable injury, and the aggrieved party shall be entitled to injunctive relief without the requirement of proving to a court in equity that the disparagement presents an immediate and/or irreparable injury, and without notice as provided for under the applicable rules of civil procedure. Moreover, no bond or other undertaking shall be required to obtain

injunctive relief.

7.    Attorney-Client Privilege.    Clients own and maintain the attorney-client privilege in accordance with the applicable state laws.  Clients do not intend to waive the privilege or release Dollinger from his obligations to strictly maintain the privilege in accordance with state law.  Dollinger shall, in accordance with his professional and ethical duties to the client, maintain all privileged materials and communications.  Dollinger shall, upon any request of any Client, transmit all Client materials, documents, work-product, files, notes, memos, pleadings, moving papers, communications, correspondence, and other property (whether or not in electronic form)("Client Files") to the Clients upon their written request. After a request has been made by a Client to receive its Client Files, Dollinger shall not keep copies of any Client Files without the express written consent of the Client.  Dollinger agrees to assist Clients in obtaining and maintaining Client files from any associate of Dollinger.

8.    Tax Responsibility. The Parties agree that they will each bear their individual respective tax liabilities that may arise from the Agreement or the carrying out of its provisions. The Parties acknowledge that no Party has any recourse against any other Party under the Agreement regarding any tax consequence of any payment or transaction pursuant to the Agreement.

9.    No Admission.  This Agreement effects a settlement of claims which are contested and denied.  Nothing herein shall be construed as an admission by any Party of any liability of any kind to the other Party or Parties except as created or referred to herein.

10.    Entire Agreement.    This Agreement contains the entire understanding and agreement between the Parties with respect to the settlement of the Claims and disputes and the subjects referenced in this Agreement.  No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, shall be deemed in any way to exist or bind any of the

Parties. The Parties each acknowledge that they have not executed this Agreement in reliance on any such representations, covenants, undertakings, or other prior or contemporaneous agreements. The First Settlement is expressly voided and all obligations and responsibilities of each Party thereto is hereby released and waived.

11.    Severability. If any provision of this Agreement as applied to any Party or to any circumstance shall be adjudged by a court of competent jurisdiction to be void and unenforceable, the same shall in no way affect:

        a.   Any other provision in this Agreement;

        b.   The application of such provision in any other circumstances; or

        c.   The validity or enforceability of the Agreement as a whole.

12.    Binding On Successors. This Agreement and the covenants and conditions contained herein shall apply to, be binding upon, and inure to the respective administrators, trustees, executors, legal representatives, assignees, successors, agents, assigns, and estates of each of the Parties.

13.    Construction. This Agreement was the product of negotiation between the Parties and shall be construed as if all Parties jointly prepared this Agreement. The language of the Agreement shall not be construed for or against any particular Party.

14.    Governing Law. This Agreement is to be interpreted, enforced, and governed by and under the laws of the State of Nevada. The Parties agree that this Agreement was made in the County of Washoe, State of Nevada, and Dollinger consents to personal jurisdiction in the State of Nevada for this purpose.

15.    Dispute Resolution. Prior to any Party seeking judicial intervention to enforce, interpret, void, or challenge the terms of this Agreement – other than to seek injunctive relief as set forth herein -- the Parties must first engage in mandatory non-binding mediation with a mediator to be appointed by the American Arbitration Association ("AAA") and in accordance

DocuSign Envelope ID: 3174FC03-B6C5-46D9-82E0-D0BCE4687687

with the AAA Commercial Arbitration Rules and Mediation Procedures.

16.    <u>Modification.</u>  This Agreement shall not be modified by any Party by oral representation made before or after the execution of this Agreement. All modifications must be in writing and signed by all Parties.

17.    <u>Enforcement.</u>  If any Party to this Agreement brings an action to interpret this Agreement or enforce that Party's rights with respect to a breach hereunder, then the prevailing Party shall be entitled to recover his, her, or its costs and expenses, including reasonable attorneys' fees, if any, incurred in connection with such proceeding.

18.    <u>Further Documents and Acts.</u>  The Parties shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the provisions of this Agreement.

19.    <u>Counterparts.</u>  This Agreement may be executed in counterparts. Execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument. Counterparts shall be deemed to be an original for all purposes and shall be effective as of the Effective Date.

20.    <u>Facsimile/Scanned Signatures.</u>  This Agreement may be executed by facsimile or by scanning the original signature into .pdf format and communicating said signature via email ("Scanned Signature"). A facsimile signature or Scanned Signature shall be deemed to be an original signature on this Agreement.

21.    <u>Warranty of Understanding and Authority.</u> The Parties have been represented by counsel of their choosing in connection with the execution of this Agreement and in the negotiations leading up to the execution of this Agreement. Each of the Parties represents that the terms of this Agreement have been completely read and explained to it and that the terms of this Agreement are fully understood and voluntarily accepted by such Party, without any duress or undue influence. Each person who executes this Agreement represents and warrants

that he or she has the express or implied authority of, as appropriate, the spouse, trustees, beneficiaries, members, officers, directors, employees, employers, or partners necessary to do so, and agrees to indemnify and hold harmless each other Party from any claims that such authority did not exist.

IN WITNESS WHERFOF, the Parties have executed this Agreement on the dates indicated below.

| | |
|---|---|
| DOUGLAS R. DOLLINGER, Individually | LAW OFFICE OF DOUGLAS DOLLINGER, PC<br>By:<br>Its: President |
| JOSEPH R. CELLURA, Individually | EMELIA BEAR CELLURA |
| MICHAEL F. GHISELLI, Individually | TIMOTHY WII BANKS, Individually<br>12/18/2023 |
| MALIBU55 INC  12/18/2023<br>By:<br>Its: President | ADMI INC<br>By:<br>Its: President |
| EP5 INC F/K/A TARSIN MOBILE INC,  12/18/2023<br>By:<br>Its: President | EPISODE5 INC  12/18/2023<br>By:<br>Its: President |

DocuSign Envelope ID: 41F48E74-82BA-4D2B-9B36-1C9D43B816B2

that he or she has the express or implied authority of, as appropriate, the spouse, trustees, beneficiaries, members, officers, directors, employees, employers, or partners necessary to do so, and agrees to indemnify and hold harmless each other Party from any claims that such authority did not exist.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates indicated below.

| | LAW OFFICE OF DOUGLAS DOLLINGER, PC |
|---|---|
| DOUGLAS K. DOLLINGER, Individually | By:_____ <br> Its: President |
| 12/11/2023 <br> *Joe Cellura* <br> JOSEPH R. CELLURA, Individually | 12/11/2023 <br> *Joe Cellura* <br> EMELIA BEAR CELLURA |
| MICHAEL F. GHISELLI, Individually | TIMOTHY WILBANKS, Individually |
| MALIBU55 INC <br><br> By:_____ <br> Its: President | ADMI INC <br><br> By:_____ <br> Its: President |
| EP5 INC F/K/A TARSIN MOBILE INC, <br><br> By:_____ <br> Its: President | EPISODE5 INC <br><br> By:_____ <br> Its: President |

DOLLINGER- ADMI ET AL   Settlement Agreement December 11, 2023        Page 11

DocuSign Envelope ID: CD18F8B5-2509-44BC-B281-85D676B0512B

that he or she has the express or implied authority of, as appropriate, the spouse, trustees, beneficiaries, members, officers, directors, employees, employers, or partners necessary to do so, and agrees to indemnify and hold harmless each other Party from any claims that such authority did not exist.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates indicated below.

| | |
|---|---|
| DOUGLAS K. DOLLINGER, Individually | LAW OFFICE OF DOUGLAS DOLLINGER, PC<br>By:<br>Its: President |
| JOSEPH R. CELLURA, Individually | 12/12/2023<br>*Emelia Bear Cellura*<br>EMELIA BEAR CELLURA |
| MICHAEL F. GHISELLI, Individually | TIMOTHY WILBANKS, Individually |
| MALIBU55 INC<br>By:<br>Its: President | ADMI INC<br>By:<br>Its: President |
| EP5 INC F/K/A TARSIN MOBILE INC,<br>By:<br>Its: President | EPISODE5 INC<br>By:<br>Its: President |

DOLLINGER- ADMI ET AL   Settlement Agreement December 11, 2023        Page 11

DocuSign Envelope ID: 3174FC03-B605-46D9-82F0-D0BCE4887887

**RESIGNATION FROM CORPORATE OFFICE AND
TENDER OF SHARES**

DOUGLAS R. DOLLINGER, individually, and The LAW OFFICE OF DOUGLAS R. DOLLINGER, PC (collectively "Dollinger"), does hereby resign any position he holds, or has ever held, as an officer or general counsel of MALIBU55 INC, ADM1 INC., EP5 INC., F/K/A TARSIN MOBILE INC., EPISODE5 INC., and of any entity owned or controlled by JOSEPH R. CELLURA, EMELIA BEAR CELLURA, MICHAEL F. GHISELLI, and TIMOTHY WILBANKS.

To the extent Dollinger claims any ownership interest or any equity interest in MALIBU55 INC, ADM1 INC., EP5 INC., F/K/A TARSIN MOBILE INC., EPISODE5 INC., and of any entity owned or controlled by JOSEPH R. CELLURA, EMELIA BEAR CELLURA, MICHAEL F. GHISELLI, and TIMOTHY WILBANKS, he does quitclaim and tender those interests to Joseph R. Cellura.

Dated this 11th day of December 2023

DOUGLAS R. DOLLINGER, Individually

LAW OFFICE OF DOUGLAS DOLLINGER PC

By:
Its: President

DocuSign Envelope ID: 3174FC03-BB05-4BD9-82E0-D0BCE4887887

## CERTIFICATE OF SUBSCRIBING WITNESS

State of New York          )
                           ) ss.:
County of _Orange_         )

On the ___12/11/2023___ day of December in the year 2023 before me, the
undersigned, a Notary Public in and for said State, personally appeared DOUGLAS
DOLLINGER the subscribing witness to the foregoing MUTUAL SETTLEMENT
AGREEMENT WITH RELEASE OF ALL CLAIMS and RESIGNATION FROM
CORPORATE OFFICE AND TENDER OF SHARES, with whom I am personally
acquainted, or whose identify has been proven to me, who, being by me duly sworn, did
depose and say that he/she/they reside(s) in
___570 County Route 49 Middletown NY 10940___
(if the place of residence is in a city, include the street and street number, if any, thereof);
that he/she/they know(s) DOUGLAS DOLLINGER to be the individual described in and who
executed the foregoing instrument;  that said subscribing witness was present and saw said
DOUGLAS DOLLINGER execute the same,  and that said witness at the same time
subscribed his/her/their name(s) as a witness thereto.

(Signature and office of individual taking proof.)

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 11 DAY OF DEC. 2023
BY Douglas Dollinger
NOTARY PUBLIC

CARELYN POHORELY
Notary Public - State of New York
NO. 01PO6192632
Qualified in Orange County
My Commission Expires  9/2/2024

F I L E D
Electronically
CV24-01834
2024-08-13 12:25:24 PM
Alicia L. Lerud
Clerk of the Court
Transaction # 10504383 : csulezic

# EXHIBIT 2

# EXHIBIT 2

**From:** Diana Sweeney <cedance@creativeedgenv.com>
**Date:** August 11, 2024 at 8:06:56PM PDT
**To:** Emelia Cellura <emeliabaer@yahoo.com>
**Subject: Fwd: Update on Emelia Cellura**

---------- Forwarded message ----------
From: **EzDr** <ezradrummond2@proton.me>
Date: Sun, Aug 11, 2024 at 6:06PM
Subject: Update on Emelia Cellura
To: ezradrummond2@proton.me <ezradrummond2@proton.me>

Dear All,

Ezra here.

I trust this message finds you well. I wanted to share some rather intriguing news regarding Emelia and her husband, Joe

She and Joe are named in a lawsuit as defendants where it claims they

embezzled approximately $17 million (allegedly).

Should you have any doubts, I invite you to read the detailed complaint in its entirety, which you can easily locate by searching online.  Just type in the following into Google: emelia ceilura empire trust

I believe there is even a free trial at Pacer Monitor. Find it and read it.

Now, I fully expect that some of you may feel compelled to forward this message to Emelia, and I wouldn't be surprised if she vehemently denies everything.

In any case, the choice is yours.


Warm regards,
Ezra

FILED
Electronically
CV24-01834
2024-08-13 03:07:44 PM
Alicia L. Lerud
Clerk of the Court
Transaction # 10505189

1  **2222**
   **FRANK C. GILMORE, ESQ. - NSB #10052**
2  frank@gilmoregroupnv.com
   The Gilmore Law Group PLLC
3  3715 Lakeside Drive
   Reno, Nevada 89509
4  Telephone:   (775) 848-6387
   Facsimile:   (775) 996-9898
5
   *Attorneys for Plaintiffs*
6

7

8          IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

9                    IN AND FOR THE COUNTY OF WASHOE

10

11

12  JOSEPH R. CELLURA and EMELIA B.              CASE NO.:  CV24-01834
    CELLURA, husband and wife,
13                                               DEPT. NO.:  1
                        Plaintiffs,
14
    v.
15
    DOUGLAS R. DOLLINGER, an individual,
16  THE LAW OFFICES OF DOUGLAS R.
    DOLLINGER, P.C. & ASSOCIATES, a New
17  York law firm, MICHAEL F. GHISELLI, an
    individual; and DOES 1-10, inclusive,
18
                        Defendants.
19

20       **PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND**
                **MOTION FOR PRELIMINARY INJUNCTION**
21

22       Plaintiffs JOSEPH R. CELLURA and EMELIA B. CELLURA ("Plaintiffs"), by and

23  through their attorneys The Gilmore Law Group PLLC, hereby submit their application for a

24  temporary restraining order, enjoining Defendants DOUGLAS R. DOLLINGER, an individual,

25  THE LAW OFFICES OF DOUGLAS R. DOLLINGER, P.C. & ASSOCIATES, a New York law

26  firm, and MICHAEL F. GHISELLI (collectively "Defendants") from sending the email attached

27  as Exhibit 2 to any other persons, and to be enjoined from representing to any other person that the

28  Cellura's "embezzled" millions of dollars.

                                    1

1    This Application and Motion is based upon the following Memorandum of Points and

2    Authorities, the Verified Complaint of Plaintiffs with attached Exhibits, and any other information

3    the Court wishes to consider.

4        DATED this 13th day of August, 2024.

5                                    THE GILMORE LAW GROUP, PLLC
                                     3715 Lakeside Drive
6                                    Reno, Nevada 89509

7

8                                    /s/ Frank C. Gilmore
                                     FRANK C. GILMORE
9                                    Attorneys for Plaintiffs

10

11            **MEMORANDUM OF POINTS AND AUTHORITIES**

12   I.     **INTRODUCTION**

13        Plaintiff Joseph R. Cellura is a former business associate of Defendant Ghiselli. Defendant

14   Dollinger is the former long-time lawyer for both the Celluras and Ghiselli. In late 2023, the

15   Celluras and Dollinger got into a dispute about various legal matters that resulted in Dollinger

16   contending that Cellura had breached an agreement between them. In an effort to resolve that

17   dispute, and to disengage Dollinger's services and ensure protection of their attorney-client

18   privileged information, the Celluras presented Dollinger with a December 11, 2023, MUTUAL

19   SETTLEMENT AGREEMENT WITH RELEASE OF ALL CLAIMS ("Settlement"). A copy of

20   the Settlement is attached to the Verified Complaint as Exhibit 1. The Settlement ended the

21   attorney-client relationship and resulted in a substantial payment from the Celluras to Dollinger.

22   Ghiselli, who was also a client of Dollinger and who had participated in the negotiations that led

23   to the Settlement, had indicated his intent to also sign the Settlement, but ultimately did not

24   execute the Settlement. Dollinger executed the Settlement and in exchange received a sizeable

25   payment from the Celluras.

26        While the Settlement was being negotiated, a corporate dispute erupted between Ghiselli

27   and Cellura regarding the control and voting rights of a Nevada entity, ADMI, Inc. Cellura

28   contends to be the controlling shareholder and Chairman of the Board. Ghiselli now contends that

1   he controls the corporation and the Board.  Despite the obligations under the Settlement, Dollinger

2   turned on the Celluras, allied himself with Ghiselli, and became openly adversarial and hostile to

3   the Celluras and began to aid Ghiselli and his allies, including through the dissemination of the

4   Cellura's attorney-client privileged information.  In doing so, Dollinger breached the Settlement,

5   and his ethical duties.

6       Dollinger filed a lawsuit against the Celluras (his former clients) on behalf of Ghiselli and

7   ADML Inc., in the United States District Court of the Southern District of New York ("SDNY

8   Action").  Cellura responded by filing a lawsuit in this Court alleging malpractice and breach of

9   fiduciary duty, which action has since been removed (a motion to remand is pending)(the "Nevada

10  Action").

11      This instant action pertains to an August 11, 2024, email sent by Dollinger and Ghiselli

12  under the pseudonym "Ezra Drummond."  The email was sent to the Cellura's daughter's dance

13  instructor, and probably to other associates of the Celluras.  This email explicitly references the

14  SDNY Action and alleges that the Celluras "embezzled" millions of dollars.  The dance instructor

15  immediately contacted the Celluras and notified them of the receipt of the email and expressed

16  concern that her name and email address had been obtained by someone who meant to do harm to

17  the Celluras.

18      The email was unquestionably sent by Dollinger and Ghiselli.  Out of all of Cellura's

19  business associates or adversaries, only Ghiselli would know the identity of the dance instructor

20  for the Cellura's teenage daughter.  Additionally, in light of Ghiselli and Dollinger's historical

21  practice of sending defamatory correspondence in order to secure litigation outcomes, the email

22  was certainly sent by Dollinger and Ghiselli, or at their direction.

23      Injunctive relief is warranted to put an end to this despicable and unseemly practice, which

24  was done by Dollinger and Ghiselli only to embarrass their litigation adversaries and to bully them

25  into abandoning their legal positions.

26  II.    STATEMENT OF FACTS

27      All facts are taken from the Verified Complaint, which is incorporated as if fully set forth

28  herein.  For the Court's convenience, a recitation of material facts is highlighted below.

3

1    On or about May 11, 2020, ONEDAY INC., was incorporated in the State of Nevada.  On

2  or about April 19, 2021, prior to the issuance of shares, the corporation changed its name to

3  ADMI, Inc.  After the name change, ADMI authorized and issued shares, which are represented

4  by four (4) separate Stock Certificates issued to its shareholders.  Pursuant to each of the issued

5  Share Certificates, Cellura holds or controls seventy percent (70%) of the outstanding stock of

6  ADMI, and Ghiselli holds or controls thirty percent (30%) of the outstanding stock of ADMI.

7    Notwithstanding the fact that the Share Certificates reflect the current ownership of ADMI,

8  both Ghiselli and Dollinger have recently contended that they control the majority of outstanding

9  shares of ADMI.  A dispute exists regarding the true and rightful owners and controlling votes

10  associated with the outstanding stock of ADMI, which disputes are the subject of two separate

11  legal actions.

12    As the ADMI control dispute was starting to erupt, a dispute between Dollinger and

13  Cellura also arose related to Dollinger's long-time representation of the Celluras.  In an effort to

14  resolve <u>all</u> disputes between Cellura and Dollinger related to DDPC's prior representation, on

15  December 11, 2023, the Celluras, and their company Malibu55, Inc., on the one hand, and

16  Dollinger and DDPC on the other hand, executed the Settlement, in which the parties agreed to a

17  mutual release in exchange for the payment of money to Dollinger.

18    In furtherance of the Settlement, Cellura caused a substantial payment to be wired to

19  Dollinger.  In additional furtherance of the Settlement, and at Dollinger's demand and instruction,

20  Cellura caused another substantial payment to be delivered to another Dollinger client (Catizone)

21  to resolve another dispute.

22    In the Settlement, Dollinger confirmed that:

23         the Parties agree that they shall not disparage each other to any third
           person, whether by oral or written (electronic) medium. This provision
24         is a material term of the Agreement, a violation of which will constitute
           a full material breach of this Agreement. Dollinger shall not attempt to
25         communicate, solicit, contact, approach, or engage any Client or any
           of Clients' employees, family members, known business associates, or
26         affiliates for any reason without Clients' express written permission.
           The Parties agree that in the event of a breach of this paragraph, the
27         aggrieved party will have suffered an immediate and/or irreparable
           injury, and the aggrieved party shall be entitled to injunctive relief
28         without the requirement of proving to a court in equity that the
           disparagement presents an immediate and/or irreparable injury, and

4

1  without notice as provided for under the applicable rules of civil
   procedure. Moreover, no bond or other undertaking shall be required
2  to obtain injunctive relief.

3  *See* Exhibit 1 to the Verified Complaint (Section 6).

4          With regard to the ADMI control dispute, Cellura filed a derivative action on behalf of

5  ADMI in the Second Judicial District Court of the State of Nevada against Dollinger and Ghiselli,

6  which action was removed to the United States District Court for the District of Nevada (the

7  "Nevada Action"). Currently pending in the Nevada action is a Motion to Remand and a Motion

8  to Dismiss and or Transfer.

9          Dollinger and Ghiselli (purporting to act on behalf of ADMI) commenced an action against

10  the Celluras in the United States District Court for the Southern District of New York, in which

11  they alleged that they controlled ADMI, and that the Celluras had misappropriated ADMI assets

12  (the "SDNY Action").

13         Dollinger and DDPC have served as legal counsel and represented the Celluras in myriad

14  capacities for several years, including as counsel of record in litigation matters in which ADMI,

15  Cellura, and Ghiselli were named. Despite the clear conflict of interest, Dollinger and DDPC are

16  currently counsel of record for Dollinger and ADMI *and against the Celluras* in the SDNY

17  Action. Currently pending in the SDNY Action are a motion to disqualify and sanction Dollinger,

18  and a motion to dismiss and/or transfer venue to Nevada.

19  **B.      THE DEFAMATORY EMAIL**

20         On Sunday, August 11, 2024, at approximately 6:96 pm, Dollinger, Ghiselli, and perhaps

21  others working at their direction, did send a defamatory email to Diana Sweeney (and likely

22  others), who is the Cellura's teenage daughter's dance instructor. A copy of the email is attached

23  to the Verified Complaint as Exhibit 2. The email was sent through a "ghost" email address and

24  sent by a pseudonym of Dollinger and Ghiselli under the name of "Ezra Drummond." Neither of

25  the Celluras have ever heard of a person called "Ezra Drummond."

26         The email explains that "I wanted to share some rather intriguing news regarding Emelia

27  and her husband Joe" and then alleges that the Cellura's "embezzled" millions of dollars. (This

28  email and other correspondence to third parties is collectively referred to as the "Defamatory

5

1   Correspondence").

2       Of those persons familiar with the ADMI disputes, only Ghiselli could have known the

3   identity of the Cellura's daughter's dance instructor. Diana Sweeney has no relationship to any of

4   the parties, or to ADMI, other than providing dance instruction to the Cellura's teenage daughter.

5   Diana Sweeney explained to the Celluras that she was troubled that she received an unsolicited

6   email from a name she does not know, related to the private business affairs of the Celluras. It is

7   probable that the email was sent to other people affiliated with the Celluras.

8       Fearing that this kind of behavior will continue, this Motion for Temporary Restraining

9   Order and Application for Preliminary Injunction and concurrently filed Complaint followed.

10  **III.    CLAIM FOR INJUNCTIVE RELIEF**

11      Injunctive relief is an exclusively equitable remedy. *Sherman v. Clark*, 4 Nev. 138 (1868).

12  The granting or denial of injunctive relief is within the sound discretion of the trial court. *Number*

13  *One Rent-A-Car v. Ramada Inns, Inc.*, 94 Nev. 779, 780, 587 P.2d 1329 (1978) ("the grant or

14  denial of a preliminary injunction is a question addressed to the discretion of the district court . .

15  ."); *Coronet Homes, Inc. v. Mylan*, 84 Nev. 435, 437, 442 P.2d 901 (1968) ("The granting,

16  refusing or dissolving of injunctions or restraining orders is a matter of discretion.").

17      In order to be entitled to a preliminary injunction for the relief sought, a plaintiff need only

18  establish that it enjoys a "reasonable likelihood of success" on the merits and that if the relief is

19  not granted, Plaintiff will suffer "irreparable harm." See e.g., *Pickett v. Comanche Constr. Co.*,

20  108 Nev. 422, 426, 836 P.2d 42 (1992) ("a preliminary injunction may be issued . . . if the party

21  seeking it shows: (1) that the party enjoys a reasonable 'likelihood of success' on the merits; and

22  (2) the party will be subjected to 'irreparable harm.'"); *Sobol v. Capital Management*, 102 Nev.

23  444, 446, 726 P.2d 335, 336 (1986) ("A preliminary injunction is available upon a showing that

24  the party seeking it enjoys a reasonable probability of success on the merits and that the

25  defendant's conduct, if allowed to continue, will result in irreparable harm for which compensatory

26  damages is an inadequate remedy.")

27      The same standard applies to requests for temporary restraining orders, but a showing of

28  immediate harm (before a preliminary injunction hearing can be had) must be shown by the

6

1   plaintiff. NRCP 65(b). It is well-established under Nevada law that a temporary restraining order

2   and preliminary injunction shall be issued if the party seeking such injunctive relief will be

3   subjected to immediate and irreparable harm, and the party seeking injunctive relief enjoys a

4   reasonable likelihood of success on the merits. See *Danberg Holdings v. Douglas Co.*, 115 Nev.

5   129, 142, 978 P.2d 311 (1999); accord *Picket v. Comanche Construction, Inc.*, 108 Nev. 422, 426,

6   836 P.2d 42 (1992); see also NRCP 65(b), NRS 33.010. The district courts of the state of Nevada

7   are vested with the authority to determine whether a temporary restraining order shall issue, and

8   such discretion will not be overturned by a higher court absent a showing of an abuse of

9   discretion. *S.O.C., Inc. v. The Mirage Casino-Hotel*, 117 Nev. 403, 407, 23 P.3d 243.

10   It has been decided in Nevada that injunctive relief is available to prevent further

11   defamation, provided that content-based restrictions "be precise and narrowly-tailored." *Gillespie*

12   *v. Council*, 132 Nev. 972 (Nev. App. 2016). In *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev.

13   237, 523 P.2d 847 (1974), the Nevada Supreme Court upheld a preliminary injunction in a

14   defamation action. In that case, explained that defamation which impairs a business opportunity

15   was irreparable harm and an injunction issued. *Id.* at 240. The court therefore held that "equity

16   will restrain tortious acts where it is essential to preserve a business or property interest and also

17   restrain the publication of false and defamatory words where it is the means or an incident of such

18   tortious conduct." *Id.* Accordingly, where defamation interferes with a plaintiff's lawful

19   business, a Nevada court may enjoin the defamation.

20   As illustrated in greater detail below, Plaintiff has more than a reasonable likelihood of

21   success on the merits and will sustain irreparable harm if the relief requested is not granted.

22   **A.   PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF AGAINST**
      **DEFENDANTS.**

23

24   Plaintiff seeks a temporary restraining order and a preliminary injunction prohibiting

25   Defendants from sending the Defamatory Correspondence (Exhibit 2 to the Verified Complaint) to

26   any other persons. They also seek an injunction preventing Defendants from representing to other

27   persons that they "embezzled" millions of dollars. The August 12, 2024, email (the "Defamatory

28   Correspondence") was sent to the Cellura's daughter's dance instructor, and was sent only for the

1    purpose of defaming the Celluras and embarrassing them into resolving the disputes with Ghiselli

2    and Dollinger. In addition to being petty and abusive, it is also defamatory.

3        Embezzlement is a criminal act. NRS 205.300 et seq. Accusing somebody of embezzling

4    millions of dollars is accusing them of committing felonious activity. Such an accusation can

5    have devastating and permanent effects on the public and private perception of a person. *See*

6    *Nevada Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 418, 664 P.2d 337, 346 (1983)(the Supreme

7    Court upheld a defamation verdict when a candidate accused his political opponent of the criminal

8    activity of "passing bad checks."). Accusing the Celluras of felonious conduct is defamation.

9        Dollinger signed the Settlement, in which he agreed that he would not defame the Celluras.

10   He also agreed that if such defamation occurred, the Settlement would be breached and the

11   Celluras could obtain injunctive relief without the necessity of showing immediate and irreparable

12   harm. Even so, because the Defamatory Correspondence is per se defamatory, it is presumed to be

13   harmful, and the fact that the email actually generated a response from their daughter's dance

14   teacher, the email constitutes immediate and irreparable harm.

15   **B.    PLAINTIFFS HAVE A REASONABLE LIKELIHOOD OF SUCCESS ON
16          THE MERITS.**

17      **1.    *Plaintiffs Will Prevail on Their Claims.***

18       Ghiselli and Dollinger sent the Defamatory Correspondence. No other persons involved in

19   the ADMI litigations would know the name of the Cellura's teenage daughter's dance instructor.

20   No other person except Dollinger and Ghiselli have such a high stake in the ADMI control dispute

21   outcome. By Dollinger and Ghiselli conspiring to send the email, Dollinger breached the

22   Settlement, and Ghiselli conspired with Dollinger to breach the contract and defame the Celluras.

23          a.    Breach of Contract

24       In order to prove the claim for breach of contract (1ˢᵗ claim), Plaintiff must prove by a

25   preponderance of the evidence: (1) the existence of a valid contract, (2) that the plaintiff

26   performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages.

27   *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transportation Comm'n of*

28   *Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 458 (Nev. App. 2022). Here, the parties

8

1  executed the Settlement to resolve the disputes between them. The Settlement is enforceable and

2  was consummated by payment of a substantial sum to Dollinger.

b.  Defamation

4  The elements of defamation are "(1) a false and defamatory statement ...; (2) an

5  unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4)

6  actual or presumed damages." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev.

7  374, 385, 213 P.3d 496, 503 (2009) (internal quotation marks omitted). For the same reasons that

8  Dollinger breached the Agreement, he defamed the Celluras by sending the Defamatory

9  Correspondence.

**C.   PLAINTIFFS CAN ESTABLISH AN IRREPARABLE INJURY WILL OCCUR IF INJUNCTIVE RELIEF IS NOT GRANTED**

12  The Settlement does not require the Celluras to prove irreparable harm in order to secure

13  an injunction to prevent defamation and disparagement. However, they are prepared to show that

14  this defamation will cause irreparable injury unless enjoined.

15  An injunction is appropriate "when it shall appear by the complaint that the plaintiff is

16  entitled to the relief demanded, and such relief or any part thereof consists in restraining the

17  commission or continuance of the act complained of, either for a limited period or perpetually. See

18  NRS 33.010(1). Such is the case here. "A statement is defamatory when it would tend to lower

19  the subject in the estimation of the community, excite derogatory opinions about the subject, and

20  hold the subject up to contempt." *Las Vegas Sun v. Franklin*, 74 Nev. 282, 287, 329 P.2d 867, 869

21  (1958); see *Posadas v. City of Reno*, 109 Nev. 448, 851 P.2d 438 (1993). "If the defamation

22  tends to injure the plaintiff in his or her business or profession, it is deemed *defamation per se*, and

23  damages will be presumed." *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 483–84, 851 P.2d 459, 462

24  (1993). The Defamatory Correspondence accuses the Celluras of "embezzlement," which is a

25  false criminal accusation and constitutes defamation *per se*. As such, damages are presumed. The

26  Defamatory Correspondence was intended to defame the Celluras and intended to bully them into

27  settling the ADMI litigation in Dollinger and Ghiselli's favor. It goes without saying that the one-

28  and-only reason why an email like this would be sent to the Cellura's daughter's dance instructor

9

1   would be to embarrass, annoy, oppress, and defame the Celluras.

2   **D.    THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS.**

3        In considering whether to grant a TRO or preliminary injunctions, this Court must also

4   weigh the potential hardships to the relative parties and others, and the public interest involved in

5   the dispute. *Univ. & Cmty. Coll. Sys. of Nevada v. Nevadans for Sound Gov't*, 120 Nev. 712, 721,

6   100 P.3d 179, 187 (2004).

7        Here, the weight falls heavily on the Plaintiffs' side.  First, no undue prejudice will result if

8   Defendants are temporarily restrained from sending defamatory emails.

9        However, the interests of the public and Plaintiffs strongly favor the issuance of the

10  injunction. The Defendants have immediately and irreparably harmed the Cellura's relationships.

11  Further conduct like this will cause even more harm.

12  **E.    NO BOND, OR A MINIMAL BOND, SHOULD BE REQUIRED FOR AN**
13  **INJUNCTION TO ISSUE.**

14       The Defendants will suffer no harm if injunctive relief is issued; they will only be required

15  to not send more defamatory emails like this one.  Accordingly, no bond is appropriate at this

16  time, as the Court may always require a bond during the pendency of the injunction if the facts and

17  circumstances so warrant. *Tracy v. Capozzi*, 98 Nev. 120, 125, 642 P.2d 591 (1982) (court may

18  increase amount of security during the pendency of the action).

19  **IV.   CONCLUSION**

20       Based upon the foregoing, Plaintiffs are entitled to a TRO and Preliminary Injunction,

21  enjoining Defendants DOUGLAS R. DOLLINGER, THE LAW OFFICES OF DOUGLAS R.

22  DOLLINGER, P.C. & ASSOCIATES, and MICHAEL F. GHISELLI from sending the

23  Defamatory Correspondence to any other persons, and from sending any correspondence to any

24  third-person accusing Joseph R. Cellura or Emelia B. Cellura of "embezzlement."

25  ///

26  ///

27  ///

28  ///

1

2

## AFFIRMATION
### Pursuant to NRS 239B.030

3

4

The undersigned does hereby affirm that this document does not contain the social security

number of any person.

5

DATED this 13th day of August, 2024.

6

7

THE GILMORE LAW GROUP, PLLC
3715 Lakeside Drive
Reno, Nevada  89509

8

9

_s_. _Frank C. Gilmore_
FRANK C. GILMORE
*Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

FILED
Electronically
CV24-01834
2024-08-19 02:20:47 PM
Alicia L. Lerud
Clerk of the Court
Transaction # 10515565

2840

## IN THE SECOND JUDICIAL DISTRICT COURT OF
## THE STATE OF NEVADA IN AND FOR THE
## COUNTY OF WASHOE

JOSEPH R. CELLURA and EMELIA B.
CELLURA, husband and wife,

               Plaintiffs,

               vs.

DOUGLAS R. DOLLINGER, an individual,
THE LAW OFFICES OF DOUGLAS R.
DOLLINGER, P.C. & ASSOCIATES, a New
York law firm, MICHAEL F. GHISELLI, an
individual; and DOES 1-10, inclusive,

               Defendants.

Case No.:    CV24-01834

Dept. No.:    1

### ORDER (1) DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND (2) SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION

Currently before the Court is *Plaintiffs' Application for Temporary Restraining Order and Motion for Preliminary Injunction* ("Application") filed by Plaintiffs Joseph R. Cellura and Emelia B. Cellura ("Plaintiffs") on August 13, 2024. In the Application, Plaintiffs seek injunctive relief from this Court in the form of a Temporary Restraining Order ("TRO") and a Preliminary Injunction. *See generally* Application.

///
///
///

1  A TRO may be granted without written or oral notice to the adverse party or that party's
2  attorney only if:

3  > (1) it clearly appears from specific facts shown by the affidavit or by the
>  verified complaint that immediate and irreparable injury, loss, or damage will
4  > result to the applicant before the adverse party or that party's attorney can be
>  heard in opposition, and (2) the applicant's attorney certifies to the court in
5  > writing the efforts, if any, which have been made to give the notice and the
6  > reasons supporting the claim that notice should not be required.

7  NRCP 65(b).

8  Here, while proper service has been effectuated upon Defendant Michael Ghiselli under
9  NRCP 4(d), no proof of proper service upon Defendants Douglas Dollinger and The Law Offices of
10  Douglas R. Dollinger, P.C. & Associates has been provided to the Court as required under NRCP
11  4(d). Reasonable attempts, formally or informally, must be made to place Defendants on notice of the
12  Celluras' intention to seek *ex parte* relief consistent with the foregoing statutory requirements.
13  Without notice to all Defendants, this Application is, in effect, an *ex parte* request for a TRO under
14  NRCP 65(b). However, Plaintiffs have failed to comply with NRCP 65(b)(2)'s requirement of an
15  affidavit certifying to the Court in writing the efforts, if any, which have been made to give the notice
16  and the reasons supporting the claim that notice should not be required.

17  In any event, no indication that any effort to make contact was sworn to. This Court is,
18  therefore, currently precluded from granting the relief sought by the Plaintiffs until procedurally
19  compliant under NRCP 65(b).

20  Despite the failure to comply with the procedural requirements of NRCP 65(b), this Court has
21  reviewed the substantive merits of the Application and has found an independent basis to deny the
22  Application for a TRO.

23  **I.   BACKGROUND**

24  On August 13, 2024, Plaintiffs filed a *Verified Complaint* setting forth the following facts and
25  assertions:

26  > 1.   Plaintiffs Joseph R. Cellura and Emilia B. Cellura are individuals residing in Washoe
27  > County. *See* Compl. at ¶¶ 1-2.

28  ///

2

2.   Defendant Douglas R. Dollinger is a licensed attorney residing in and practicing in the State of New York. *Id.* at ¶ 3.

3.   Defendant The Law Offices of Douglas R. Dollinger, P.C. & Associates ("DPPC") is a New York professional law firm corporation that is owned by Dollinger and employs Dollinger as its licensed attorney. *Id.* at ¶ 4.

4.   Defendant Michael F. Ghiselli is a resident of the State of California. *Id.* at ¶ 5.

5.   Defendant Ghiselli is a former business associate of the Plaintiffs. *Id.*

6.   In his capacity as an attorney, Mr. Dollinger has previously represented both Plaintiffs and Defendant Ghiselli in various legal matters. *Id.* at ¶ 3.

7.   On or about May 11, 2020, ONEDAY INC. was incorporated in the State of Nevada. *Id.* at ¶ 15.

8.   On or about April 19, 2021, prior to the issuance of shares, the corporation changed its name to ADMI, Inc. *Id.* at ¶ 16.

9.   Following the name change, ADMI authorized and issued shares, represented by four (4) separate stock certificates issued to its shareholders. *Id.* at ¶ 17.

10.  A dispute exists between Plaintiff Joseph Cellura and Defendants as to the true and rightful owners and controlling votes associated with outstanding stock of ADMI, which dispute is the subject of two separate legal actions based in the Southern District of New York and the District of Nevada. *Id.* at ¶¶ 15-29.

11.  After the dispute arose, on or about December 11, 2023, Plaintiffs, their company Malibu55, Inc., and Defendants Dollinger and DPPC entered into a Settlement Agreement which included a mutual release in exchange for the payment of money to Defendant Dollinger. *See* Compl. Exh. 1, Mutual Settlement Agreement with Release of All Claims (redacted) (hereafter "Settlement Agreement"). *Id.* at ¶ 30.

12.  Specifically, the Settlement Agreement provides that:

> Non-Disparagement and Non-Solicitation. The Parties agree that they shall not disparage each other to any third-person, whether by oral or written (electronic) medium. This provision is a material term of the Agreement, a violation of which will constitute a full material breach of this Agreement. Dollinger shall not attempt to communicate, solicit,

3

contact, approach, or engage any Client or any of Clients' employees,
family members, known business associates, or affiliates for any reason
without Clients' express written permission. The Parties agree that in
the event of a breach of this paragraph, the aggrieved party will have
suffered an immediate and/or irreparable injury, and the aggrieved
party shall be entitled to injunctive relief without the requirement of
proving to a court in equity that the disparagement presents an
immediate and/or irreparable injury, and without notice as provided for
under the applicable rules of civil procedure. Moreover, no bond or
other undertaking shall be required to obtain injunctive relief.

*See* Compl. Ex. 1, Mutual Settlement Agreement, Section 6.

13.  On or about August 11, 2024, Diana Sweeney ("Ms. Sweeney") received an email from "Ezra Drummond" regarding the Plaintiffs, alleging they have embezzled approximately $17 million and encouraging Ms. Sweeney to look into the Southern District of New York litigation. *See* Compl. at ¶ 36.

14.  Plaintiffs suspect the email was sent by Defendants under the pseudonym Ezra Drummond. *Id.* at ¶¶ 37-44.

15.  On August 13, 2024, Plaintiffs filed the instant lawsuit and Application,[1] requesting injunctive relief to prevent disparaging emails from being sent. *See generally* Application.

16.  Therefore, Plaintiffs argue it is highly likely that Defendants will continue to send disparaging emails about Plaintiffs if they are not immediately enjoined.

## II.   LEGAL AUTHORITY

Injunctive relief, whether a TRO or a preliminary injunction, is proper under Nevada law where the moving party can demonstrate "(1) a likelihood of success on the merits; and (2) a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damage is an inadequate remedy." *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 408, 23 P.3d 243, 246 (2001) (*citing Dangberg Holdings Nevada, L.L.C. v. Douglas County*, 115 Nev. 129, 978 P.2d 311 (1999); *see also* NRS 33.010. With respect to preliminary injunctions, the Court may also weigh the "potential hardships to the relative parties and others, and the public interest." *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120

---

[1] While this Application is both a request for a TRO and a Preliminary Injunction, the "separate document" requirement under WDCR 10(3)(a) does not apply to requests for injunctive relief made under NRCP 65. Therefore, this Court may presently consider the TRO and set the Preliminary Injunction for a hearing without the need for formal submission.

4

1    Nev. 712, 721, 100 P.3d 179, 187 (2004). Nevada law allows this Court to issue injunctive relief in

2    defamatory actions. *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev. 237, 523 P.2d 847 (1974).

3    Similarly, where defamation interferes with a plaintiff's lawful business, this Court may enjoin the

4    defamation. *Id.*

5            The granting of a TRO is an extreme remedy. The stringent requirements reflect the fact that

6    "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and

7    an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v.*

8    *Teamsters*, 415 U.S. 423, 439 (1974) (discussing the Federal Rule of Civil Procedure FRCP 65 that

9    contains identical language to the Nevada rule); *see also Las Vegas Novelty, Inc. v. Fernandez*, 106

10   Nev. 113, 117, 787 P.2d 772, 774 (1990) (noting that NRCP 65 was drawn from an earlier version of

11   FRCP 65, making it appropriate to look to federal cases and treatises in construing our rule).

12   **III.    ANALYSIS**

13           After reviewing the findings and applicable law, this Court finds good cause to deny Plaintiffs'

14   TRO Application. For multiple reasons, Plaintiffs fall short of the requirements for a TRO to be

15   issued. First, Plaintiffs have failed to show the claim of defamation has a likelihood of success on the

16   merits based on the pleadings. The only allegation relates to an e-mail communication sent via an

17   undisclosed party to Plaintiffs' child's dance teacher, Ms. Sweeney, regarding a case to be decided in

18   the Southern District of New York.

19           Accordingly, Plaintiffs have failed to satisfy the requirements of NRCP 65(b) and the request

20   for a TRO is therefore denied. As discussed above, despite the failure to comply with procedural

21   requirements, this Court has reviewed the substantive merits of the Application and has found an

22   independent basis to deny the Application for a TRO. As this Court requires more information to

23   make a determination on the Preliminary Injunction, this Court will accordingly set a hearing on same.

24   *A. Likelihood of Success on the Merits—Defamation*

25           In Nevada, the elements of defamation are "(1) a false and defamatory statement by [a]

26   defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault,

27   amounting to at least negligence; and (4) actual or presumed damages." *Clark Cnty. Sch. Dist. v.*

28   *Virtual Educ. Software, Inc.*, 125 Nev. 374, 385, 213 P.3d 496, 503 (2009); *Pegasus v. Reno*

1   *Newspapers, Inc.*, 118 Nev. 706, 718, 57 P. 3d 82, 90 (2002). Certain classes of defamatory statements

2   are, however, considered defamatory per se and are actionable without proof of damages. *Pope v.*

3   *Motel 6*, 121 Nev. 307, 319, 114 P.3d 277, 285 (2005). Where the defamatory communication imputes

4   a crime, it may constitute defamation per se. *Id.*

5          The first requirement of defamation is not indisputably met as required to establish a

6   likelihood to succeed on the merits for a TRO to issue. Upon review of the e-mail communication

7   attached to the Verified Complaint at Exh. 2, it discusses the ongoing litigation between the parties

8   in the Southern District of New York. Although the communication is concerning, it is not irrefutably

9   false and defamatory, therefore failing to meet the first element of defamation. Further, as to the first

10  requirement of a defamation claim, Plaintiffs suspect, but do not know that the email was sent by

11  Defendants under the pseudonym Ezra Drummond, and thus it has not been confirmed that the

12  statement was made "by a defendant concerning the plaintiff[s]". *Pegasus*, 118 Nev. at 718, 57 P.3d

13  at 90.

14         Thus, this Court cannot determine there is a likelihood of the Plaintiffs' success on the merits

15  without a hearing.

16         ***B. Irreparable Harm***

17         "[A] contractual provision stipulating that irreparable harm will result from a breach is

18  insufficient to satisfy the irreparable harm requirement" for a preliminary injunction to issue.

19  *ActionCOACH North Am., LLC v. Dunn*, 2020 WL 1066321, at *1 (D. Nev. Mar. 4, 2020). Here,

20  Plaintiffs have not established a threat of irreparable harm independent of the language in the

21  Settlement Agreement.

22         Accordingly, due to a procedural deficiency under NRCP 4(d), namely failure to provide proof

23  of service for Defendants Douglas Dollinger and The Law Offices of Douglas R. Dollinger, P.C. &

24  Associates, and failure to demonstrate a likelihood of success on the merits, the Application is denied.

25         Based upon the foregoing and good cause appearing,

26         IT IS HEREBY ORDERED that *Plaintiffs' Application for Temporary Restraining Order and*

27  *Motion for Preliminary Injunction* is DENIED.

28  ///

6

1      IT IS HEREBY FURTHER ORDERED that the parties shall appear before the Court to

2  present oral argument and evidence on Plaintiffs' request for a preliminary injunction on **September**

3  **23, 2024 at 9:00 a.m.**

4      IT IS HEREBY FURTHER ORDERED that Plaintiffs shall serve the Defendants with a copy

5  of this Order.

6      IT IS SO ORDERED.

7      DATED this 19th day of August, 2024.

8

9                                                        _____

10                                                       KATHLEEN M. DRAKULICH
                                                         DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that I am an employee of the SECOND JUDICIAL DISTRICT COURT of the STATE OF NEVADA, COUNTY OF WASHOE; that on the 19ᵗʰ day of August, 2024, I electronically filed the **ORDER (1) DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND (2) SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of the Court by using the ECF system.

I further certify that I transmitted a true and correct copy of the foregoing document by the method(s) noted below:

**Electronically filed with the Clerk of the Court by using the ECF system which will send a notice of electronic filing to the following:**

FRANK GILMORE, ESQ. for PLAINTIFFS

**Deposited to the Second Judicial District Court mailing system in a sealed envelope for postage and mailing by Washoe County using the United States Postal Service in Reno, Nevada: [NONE]**

Judicial Assistant

8

6:59

**New iMessage**          Cancel

To: Frank Gilmore, Esq., Doug Dollinger

Frank Gilmore, Esq.

Maybe. I get paid no matter what. And maybe we will get that $800k back from you so we have more money for lawyer fees.

Doug Dollinger

BTW. Please send me agreement signed by ADMI

LAWFUL BOARD

Frank Gilmore, Esq.

Don't need to. You signed it and took the money. It's you we are after.

Doug Dollinger

You need to do research. Let's just see what happens.  Remember the counter and cross claims allege RICO and nam Max ABG SHV  and T&L. I also prepared the lis pendence based on counterclaims.  Any you should make a good fee if they don't move to disqualify you.

+

**Exhibit "2"**

7:09

**New iMessage**          Cancel

To: Frank Gilmore, Esq.

I'm going to need your help on the rebuild of the books. Do you work closely with Peyton?

Tue, Dec 12 at 9:14 AM

Will you sign the settlement agreement with Dollinger?

Sent with Siri

I will sign this copy as well.

Thanks. I have joe's signature.  I'll circulate a final copy

Do you want me to sign for the companies?  I'm at the airport so it may take a bit.

No rush. But yes.



Ok

Delivered

+

**Exhibit "2.1"**

# Celluras v. Dollinger & Ghiselli -- DEFAMATION

From: Frank Gilmore (frank@gilmoregroupnv.com)

To:     drdlinxs@aol.com; mghiselli@icloud.com

Cc:    mc@gilmoregroupnv.com

Date: Tuesday, August 13, 2024 at 06:47 PM EDT


Gentlemen,

Please see attached the Complaint filed this morning and the Motion for TRO and Preliminary Inunction related to the "Ezra Drummond" emails you are sending to the Cellura family acquaintances.

Please advise if you will stipulate to the TRO or if I will have to request a hearing and emergency discovery to prove that you are behind this. If you contend that you are not behind this then you should be willing to stipulate that you will not circulate the email, and will not defame the Celluras by contending that they have committed felonies.

I will contact the Judge tomorrow and advise that I have notified you of the pending action and the intention to seek a TRO.

Be advised that the amount in controversy is below the required amount for removal to United States District Court.

I await your response.

Frank C. Gilmore, Esq.
The Gilmore Law Group, PLLC
3715 Lakeside Drive
Reno, Nevada 89509
Ph: (775) 848-6387
Fax: (775) 996-9898
frank@gilmoregroupnv.com

**Exhibit "2.2"**

THE
# GILMORE
LAW GROUP

CONFIDENTIALITY:  This email (including attachments) is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law.  If you are not the intended recipient, please do not read, copy, or re-transmit this communication.  If you are the intended recipient, this communication may only be copied or transmitted with the consent of the sender.  If you have received this email in error, please contact the sender immediately by return email and delete the original message and any attachments from your system.  Thank you in advance for your cooperation and assistance.

IRS CIRCULAR 230 DISCLAIMER:  Any tax advice contained in this email is not intended to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax penalties that may be imposed on the taxpayer.  Further, to the extent any tax advice contained in this email may have been written to support the promotion or marketing of the transactions or matters discussed in this email, every taxpayer should seek advice based on such taxpayer's particular circumstances from an independent tax advisor.

 1 2024-08-13 Complaint Cellura v. Dollinger.Defamation W Exhibits.pdf
1.5MB

 2 2024-08-13 Motion for TRO and PI.pdf
251.5kB

**Exhibit "2.3"**

On Tuesday, August 13, 2024 at 07:58:13 PM EDT, Frank Gilmore
<frank@gilmoregroupnv.com> wrote:

If it wasn't you then agree to stipulate that you had nothing to do with it and you
will stipulate to an injunction that you won't do something like this in the future.
Let me know.

Did you read the email sent to the dance teacher?? Despicable.

What's next, the school??

Frank C. Gilmore, Esq.
The Gilmore Law Group
3715 Lakeside Dr.
Reno, Nevada 89509
Ph: 775-848-6387
Fax: 775-996-9898

> On Aug 13, 2024, at 4:55 PM, Douglas R. Dollinger, ESQ.
> <drdlinxs@aol.com> wrote:

I have no idea who would do this and I would not approve but
far worse you are out line and whatever you do I will deal with.
Truly at this point I am going to take direct action.   If you have
real claim go to the authorities........................ I know I will be
doing so if you continue to act in this mare it is reckless
harassing

If it is not remove tonight.  I will seek my own relief.   Even if
Mike had done something like this, and I do not believe he did,
he would certainly not tell me.  Moreover, he is working hard for
with the New York Attorneys.  Wake up!!!!!!!!!!!!!

Frank I have been on trial  and witting the RICO Complaint
against ABG  and T &L   I am sure you are aware of there most
recent problems and the lawsuits agaisnt them for exactly what
they did here.

Anyway like I said I have no idea but I  do know what the result
will be if you do not withdraw the complaint it is a serious

**Exhibit "2.4"**

about:blank

## Re: Celluras v. Dollinger & Ghiselli -- DEFAMATION

From:  Frank Gilmore (frank@gilmoregroupnv.com)

To:    drdlinxs@aol.com

Date:  Tuesday, August 13, 2024 at 07:35 PM EDT

If you say this wasn't you, then tell us who it was.

This is classic MO for you and Mike. I have plenty of letters from Mike where he does this and sends to anybody who will read it.

Enough with the defamation.

The dance teacher?! Come on....

Frank C. Gilmore, Esq.
The Gilmore Law Group
3715 Lakeside Dr.
Reno, Nevada 89509
Ph: 775-848-6387
Fax: 775-996-9898

> On Aug 13, 2024, at 4:32 PM, Douglas R. Dollinger, ESQ. <drdlinxs@aol.com> wrote:

> I have no idea what this is about but I will  be filing a a second motion in Districts Court and beveled you are engaged serious misconduct.
> your claim is childish.  What is  more it is not simply unprofessional,  it is far worse and I will be treating as such.

> I want to see some proof of this claim.  These false accusations are clearly intended to gain an advantage in a civil action.  It is time to get the authorities involved.

> I  think the complaint in New York said it all............... My suggestion discontinue this quickly  it quickly.

**Exhibit "2.5"**

# Re: Celluras v. Dollinger & Ghiselli -- DEFAMATION

From:  Frank Gilmore (frank@gilmoregroupnv.com)

To:    mghiselli@icloud.com

Cc:    drdlinxs@aol.com; mc@gilmoregroupnv.com

Date:  Wednesday, August 14, 2024 at 12:45 AM EDT


Mike,

Are you and Doug willing to sign sworn affidavits that (1) you had zero involvement in the emails, (2) that you do not condone such emails (3) that you will not send such emails to persons unrelated to the dispute, and (4) that if you learn who might have been involved in sending the emails you will notify me?

If you are willing to provide this under oath, I might be able to convince the Celluras to drop the case.

Frank C. Gilmore, Esq.
The Gilmore Law Group
3715 Lakeside Dr.
Reno, Nevada 89509
Ph: 775-848-6387
Fax: 775-996-9898


On Aug 13, 2024, at 6:48 PM, Mike Ghiselli <mghiselli@icloud.com> wrote:


Frank,
My attorneys are speaking to Mr. Dollinger in the morning regarding your email. We want to know when the hearing is taking place. We will make sure the judge understands Mrs. Baer-Cellura's social media accounts are public, that anyone could have gathered that information. As I have told you repeatedly, Mr. Cellura has harmed many people for decades and they want to see him go to prison. I did not write or send this email, nor did I direct anyone to do so.  My attorneys have said you had better have concrete proof of your accusation.
Regards,
Mike Ghiselli
Sent from my iPhone

**Exhibit "2.6"**

# Re: Celluras v. Dollinger & Ghiselli -- DEFAMATION

From:   Frank Gilmore (frank@gilmoregroupnv.com)

To:     drdlinxs@aol.com

Date:   Wednesday, August 14, 2024 at 12:48 AM EDT


Doug, we aren't playing games. I don't play games. Somebody sent a menacing and threatening letter to the family's dance instructor. That's where the games are being played. You and Mike are the two most likely to benefit from publishing the Empire lawsuit and the allegations contained in it. And you two benefit the most from the defamation. So, it's obvious that you two would be the primary suspects.

If these despicable games cease, then our response to these games will cease.

Frank C. Gilmore, Esq.
The Gilmore Law Group
3715 Lakeside Dr.
Reno, Nevada 89509
Ph: 775-848-6387
Fax: 775-996-9898

> On Aug 13, 2024, at 5:11 PM, Douglas R. Dollinger, ESQ. <drdlinxs@aol.com> wrote:

Frank. I will sign nothing except for the documents necessary to ensure these games stop. I will take action and I assure you the outcome will far different than what you want. I will once again tell you I know nothing of this and would never engage in any activity as you claim. You ne to think.

My goal is to get this all settled. That is why I am going after ABG and T &L (NOT MAX NO ONE ESLE) This not a game Either help or stay out of my way ........ I told you I was willing to get to where Joe wants but it cannot happen when you play these games. Let me know do I need to ask the have this addressed by the District Court.

**Exhibit "2.7"**

On Jan 17, 2024, at 12:16 PM, John Shackelford <jshack@shackelford.law> wrote:

I represent Tim Wilbanks and your letter to Bruce Houle dated January 11ᵗʰ 2024 was sent to me and Mr. Wilbanks has requested I respond to factually incorrect assertions made about him in your letter.  **You do not, nor have you ever, represented Mr. Wilbanks regarding Bruce Houle or regarding anything else.**  Further, Mr. Wilbanks is not nor has he ever been a principal of ADMI, Inc. (ADMI).  Mr. Wilbanks did permit himself to be installed as CEO and Chairman of the Board of SIR Incorporated (SIR) and he authorizes me to advise you and as counsel to Joe Cellura that effective immediately he hereby resigns any and all positions he may have or had in SIR, including being CEO and Chairman of the Board.  Lastly, please cease from representing to any one that you represent Mr. Wilbanks or that he was a principal of ADMI.

John

John C. Shackelford, Esq.

Shackelford, Bowen, McKinley & Norton, LLP

9201 N. Central Expressway, Fourth Floor

Dallas, Texas 75231

Tel: (214) 780-1400

Direct: (214) 780-1414

Fax: (214) 780-1401

E-mail:    jshack@shackelford.law

Website: www.shackelford.law

SHACKELFORD, BOWEN, McKINLEY & NORTON, LLP E-MAIL NOTICE - This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an attorney work product, or (3) strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.

Unless it specifically so states, this communication does not reflect an intention by the sender or the sender's client or principal to conduct a transaction or make any agreement by electronic means. Unless it specifically so states, nothing contained in this message or in any attachment shall satisfy the requirements for a writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act, or any other statute governing electronic transactions.

EXHIBIT"3"

*Law Office of*
*Douglas R. Dollinger, P.C.*
*& Associates, Counselors at Law*

Telephone 845.741.9363
_____

Affiliated Offices
San Fransico, California
New York City, New York

Admitted to Both
State and Federal Practice

570 County Route 49
Middletown New York 10940
ddollingeresq@gmail.com

January 9, 2024

The Gilmore Law Group, PLLC
3715 Lakeside Drive
Reno, NV 89509
E-mail: frank@gilmoregroupnv.com

Re: <u>Dollinger advs. Cellura, et anos.</u>

Dear Mr. Gilmore:

Frankly, you misled me. Your Settlement Documents claim the parties as "Clients" when in fact you do not represent them and only represent Mr. & Mrs. Cellura and possibly Malibu55. Your tender of the Settlement Agreement as the attorney for all parties cannot be ignored as to its prejudicial effect. Clearly it is unenforceable and implies serious questions of your professional conduct. I want to avoid any unnecessary need for me to litigate what can be resolved by direct communication with me and suggest you read my letter as an attempt to resolve multiple issues which remain in this matter.

You had no authority to enter into a settlement agreement on behalf of ADMI-GBCC, TARSIN MOBILE-EP5, or on behalf of Mr. Ghiselli unless you had their consent in writing and understood the separate agreements between us before you did so, including an outstanding Note payable to me from SIR and my voting proxy for ADMI-GBCC to Mr. Ghiselli. This means the settlement cannot be enforced as written. This is especially true of ADMI-GBCC, TARSIN-EP5, and even the Catizones. Again, this was and is all highly unethical.

Where is the signed Settlement Agreement for the Catizones. I represented them in negotiating the terms of their sale but made sure they had independent counsel in reviewing their Settlement Agreement. I placed it in writing. I was not representing them in their desire to settle with Mr. Cellura and you were made aware of their independent counsel during your telephone conversation with Pat Catizone, Mr. Ghiselli and me.

I want to remind you Mr. Ghiselli is an officer of these companies and controls the votes as majority shareholders and by proxy. I gave my full voting power to Mr. Ghiselli. I relied on his position and authority for the separate agreements provided by the Boards' of ADMI-GBCC-SIR provided to me. Controlling in my consent to settle was my reliance on Mr. Cellura's public announcement that he retired from the ADMI-SIR-TARSIN/EP5 Boards in May 2023, and that Mr. Ghiselli was fully in charge and making decisions for ADMI-SIR-TARSIN/EP5 and GBCC Trust beneficiaries. I voted-assigned by proxy to him only on the basis of Mr. Cellura's retirement leaving Mr. Ghiselli as the majority shareholder in charge of these companies and the Trust shares under his control.

**Exhibit "4"**

Re: <u>Dollinger advs. Cellura, et anos.</u>
January 9, 2024
Page -2-

I did not consent to the settlement as drawn and the right to tender it as drawn was and is a misrepresentation orchestrated by Mr. and Mrs. Cellura, but  consistent with their continued wrongful activity. Until such time as a settlement agreement has been executed with Mr. Ghiselli and ADMI to include acknowledging all claims and future payments due from SIR-GBCC and to Empire on the Notes issued,  I  am, and will treat the agreement as void concerning what I am owed by Mr. Cellura, and these companies.

You need to devote the time to resolve these issues. Unless Mr. and Mrs.  Cellura cease their illicit acts,  I intend (**AS THE LAW ALLOWS ME**) to exercise my rights and continue to discuss these matters with the Securities and Exchange Commission, the IRS and others.  I intend on doing so this coming week.  I am also placing ABG and SHV on notice of my lien and their exposure. Documents for prosecution have been drawn for filing in New York.  They include a request for a receiver.

Under an agreement with ADMI, the funds in the name of Global Fidelity Partner's Trust $800,000, will be used to prosecute Mr. and Mrs.  Cellura, less outstanding fees owed to me for legal service including by reason of the  New York and California claims by both ADMI and Mr. Cellura  against Alan D. Moyer and ADMI California and by them.

I am available to speak with you initially,  but you need to have Mr. Cellura on the telephone with you for a second call.  I will, for now, assume this was unintentional on your part, but it must be resolved.  Leaving these claims outstanding without authority to obtain a release of claims, impacts my future rights by deception and is not going to stand.  What is more, it is highly prejudicial to each of these companies and Mr. Ghiselli in his undertakings to satisfy the trail of old debt left behind by Mr. Cellura.

A settlement needs to be entered  all the way around, with approval from all PARTIES.  Unless otherwise it leaves the agreements void of authority  and unenforceable by the lack of release.  How could you tender a document with the term to include all signatories as **Clients** unless they were your clients retained under your control and where you were granted the right to act on their behalf. You had no right to do so.  (I can only assume as your prior letter expresses, that we were still negotiating.)

There is no need for discord.  I am not looking to enhance the settlement terms *per se*, but want all claims included in a fully developed settlement agreement clearly understood with my future claims protected. There really is no effect on Mr. Cellura, and in fact the opposite is true, it relieves him and Mrs. Cellura, for reasons absent explanation by them in the wrongful use of corporate funds as unlawful.

Mr. Cellura's claims of control are childish and far worse. Purchasing a home to evade taxes and regulatory oversight  is beyond tolerable and action has been taken to unwind his and his wife's wrongdoing.  I assure you unless these matters are corrected there will be no stopping these efforts. I am not alone in my thoughts and more importantly my actions.

My trust is in Mr. Ghiselli ONLY.   These matters MUST and WILL be resolved on all sides in the next several days.   In the event it is not I will seek payment of my full 10% of the SIL purchased and hold the funds, less fees due,  until a Court directs a disbursement and will also file my claims as stated as well as those with ABG and SHV as I intended.  No doubt, there will be their full support.

Yours Truly,

*Douglas R. Dollinger, Esq.*

Douglas R. Dollinger, Esq.
EK/drd
CC. M.  Clarke, B. Miller.  ADMI BOD, Michael Ghiselli-ADMI.